DANIEL L. WARSHAW (Bar No. 185365)
  dwarshaw@pswlaw.com
BOBBY POUYA (Bar No. 245527)
  bpouya@pswlaw.com
MATTHEW A. PEARSON (Bar No. 291484)
  mapearson@pswlaw.com
ALEXANDER R. SAFYAN (Bar No. 277856)
  asafyan@pswlaw.com
**PEARSON, SIMON & WARSHAW, LLP**
15165 Ventura Boulevard, Suite 400
Sherman Oaks, California 91403
Telephone: (818) 788-8300
Facsimile:  (818) 788-8104

Attorneys for Plaintiff James Eashoo,
individually and on behalf of all others
similarly situated

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES EASHOO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>IOVATE HEALTH SCIENCES U.S.A., INC.,<br><br>Defendant. | CASE NO. 2:15-cv-01726-BRO-PJW (Assigned to the Honorable Beverly Reid O'Connell)<br><br>**CLASS ACTION**<br><br>**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:    November 9, 2015<br>Time:    1:30 p.m.<br>Crtrm:  14 - Spring St. Floor |

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

865070.5

**TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on November 9, 2015, at 1:30 p.m. or as soon thereafter as the matter may be heard in the Courtroom of the Honorable Beverly Reid O'Connell, United States District Court, Central District of California, Central Division, Plaintiff James Eashoo will and hereby does move the Court, pursuant to Federal Rule of Civil Procedure 23(e), for the entry of an Order:

1.      Preliminarily approving the Settlement Agreement between Plaintiff James Eashoo and Defendant Iovate Health Sciences U.S.A., Inc.;

2.      Directing notice of the proposed settlement to the Class; and

3.      Setting a schedule for the final approval process.

The grounds for this motion are that the proposed settlement is within the necessary range of reasonableness to justify granting preliminary approval.

This motion is based upon this Notice of Motion and Motion for Preliminary Approval of Class Action Settlement, the Declaration of Daniel L. Warshaw, the pleading and papers on file in this action, and such oral and documentary evidence as may be presented at the hearing on this motion.

DATED: October 9, 2015          **PEARSON, SIMON & WARSHAW, LLP**
DANIEL L. WARSHAW
BOBBY POUYA
MATTHEW A. PEARSON
ALEXANDER R. SAFYAN


By:   _____*/s/ Daniel L. Warshaw*_____
          DANIEL L. WARSHAW
Attorneys for Plaintiff James Eashoo,
individually and on behalf of all others

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

865070.5

# **TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................ 1

I.    INTRODUCTION .................................................................................................. 1

II.   FACTUAL AND PROCEDURAL HISTORY ...................................................... 2

III.  SUMMARY OF THE SETTLEMENT ................................................................. 4

  A.    Class Member Relief .................................................................................. 5

    1.    Monetary Relief ............................................................................... 5

    2.    Injunctive Relief .............................................................................. 5

  B.    Narrowly Tailored Release ........................................................................ 6

  C.    Cost of Administration and Class Notice .................................................. 6

IV.   THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT ......................................................................................................... 6

  A.    Standard for Preliminary Approval ........................................................... 6

  B.    The Settlement Provides Substantial Relief to the Class and is Well Within the Necessary Range of Reasonableness .......................... 8

    1.    The Strength of Plaintiff's Case Compared to the Risk, Expense, Complexity, and Likely Duration of Further Litigation ........................................................................................ 8

    2.    The Amount Offered in Settlement ............................................. 10

    3.    The Risk of Maintaining Class Action Status Through Trial .................................................................................................. 11

    4.    The Extent of Discovery Completed and the Stage of the Proceedings ...................................................................................... 11

    5.    The Experience and Views of Counsel ....................................... 12

V.    THE COURT SHOULD CERTIFY A SETTLEMENT CLASS FOR SETTLEMENT PURPOSES ............................................................................... 13

  A.    The Requirements of Rule 23(a) Are Satisfied ...................................... 13

    1.    Numerosity ...................................................................................... 14

    2.    Commonality ................................................................................... 14

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

865070.5

i

3.      Typicality ..................................................................... 15

4.      Adequacy of Representation ......................................... 15

B.      The Requirements of Rule 23(b)(3) Are Satisfied ................................ 16

VI.     THE SETTLEMENT PROVIDES PROPER NOTICE TO THE CLASS ................................................................................................. 17

VII.    THE COURT SHOULD SET A FINAL APPROVAL HEARING SCHEDULE ............................................................................................. 19

VIII.   ATTORNEYS' FEES AND COSTS AND ENHANCEMENT AWARDS ................................................................................................. 20

IX.     CONCLUSION ................................................................................. 21

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

**TABLE OF AUTHORTIES**

**Page**

**Page(s)**

CASES

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ................................................................... 17, 13

*Churchill Vill., L.L.C. v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) .......................................................... 6, 7

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ............................................................. 6

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ....................................................... 7, 15

*Hanon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992) ............................................................ 15

*In re Abbott Labs. Norvir Anti-trust Litig.*,
   Case Nos. C 04-1511 CW, C 04-4203 CW, 2007 WL 1689899, (N.D. Cal.
   June 11, 2007) ................................................................................. 14

*In re Mercury Interactive Corp. Sec. Litig.*,
   618 F.3d 988 (9th Cir. 2010) ........................................................... 20

*In re Syncor ERISA Litig.*,
   516 F.3d 1095 (9th Cir. 2008) ............................................................ 6

*In re Tableware Antitrust Litig.*,
   484 F.Supp.2d 1078 (N.D. Cal. 2007) ........................................... 6, 17

*Ivie v. Kraft Foods Global, Inc.*,
   2015 WL 183910, (N.D. Cal. Jan. 14, 2015) .................................. 9, 10

*Mullane v. Cen. Hanover Bank & Trust Co.*,
   229 U.S. 306 (1950) ....................................................................... 17

*Radcliffe v. Experian Info. Solutions, Inc.*,
   715 F.3d 1157 (9th Cir. 2013) ......................................................... 20

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Torrisi v. Tucson Elec. Power Co.*,
 8 F.3d 1370 (9th Cir. 1993) ................................................................. 7

*Vasquez v. Coast Valley Roofing, Inc.*,
 670 F.Supp.2d 1114 (E.D. Cal. 2009) ................................................. 7

*Wal-Mart Stores, Inc. v. Dukes*,
 131 S. Ct. 2541 (2011) ........................................................ 13, 14, 16

**STATUTES & RULES**

Cal. Bus. & Prof. Code §§ 17200 *et seq.* ......................................... 2, 3

Cal. Bus. & Prof. Code §§ 17500 *et seq.* ............................................. 2

Cal. Civ. Code § 1781 ...................................................................... 17

Cal. Civ. Code §§ 1770 *et seq.* .......................................................... 2

Fed. R. Civ. P. 23(a) ........................................................... 13, 14, 16

Fed. R. Civ. P. 23(b) ............................................................... 13, 16

Fed. R. Civ. P. 23(c)(2)(B) .............................................................. 16

Fed. R. Civ. P. 23(e) ........................................................................ 6

Fed. R. Civ. P. 26 .................................................................... 3, 12

Fed. R. Civ. P. 30(b)(6) ............................................................ 3, 12

Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.* ................... 2

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

865070.5

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

This class action is centered on allegations that Defendant Iovate Health Sciences U.S.A., Inc. ("Iovate") "spiked" its protein supplements with non-protein compounds to artificially inflate the claimed amount of protein contained therein. Rather than litigate this case through class certification and trial, and face the uncertainties that come therewith, Plaintiff James Eashoo ("Plaintiff" or "Eashoo") and Iovate engaged in arm's-length settlement negotiations with the assistance of a respected and experienced neutral, the Honorable Dickran M. Tevrizian (Ret.).  As a result of these settlement negotiations, Plaintiff has obtained a nationwide class action Settlement,[1] which provides substantial monetary and injunctive relief to purchasers of Iovate protein supplements and adequately remedies the harm alleged by Plaintiff.

The Settlement Agreement creates a $2.5 million non-reversionary common fund in which Class Members can participate and obtain refunds for their eligible purchases in three ways: (1) filing a claim using receipts for a 100% refund of the amount(s) shown on the receipt for each Protein Product[2] up to $300 per household; (2) filing a claim by submitting proof of purchase to redeem the suggested retail price for each Protein Product up to $300 per household; or (3) filing a claim without any receipt or proof of purchase to receive $10.00 per Protein Product up to

---

[1] All capitalized terms herein shall have the definitions set forth in the Settlement Agreement unless otherwise stated.  The Settlement Agreement is attached to the Declaration of Daniel L. Warshaw as Exh. 1.

[2] The term "Protein Products" is defined in the Settlement Agreement and herein as any of the protein supplements distributed by Defendant under any brand name including MuscleTech, Six Star, Epic, or fuel:one during the Class Period. (Settlement Agreement § 1.32.)

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

1  $50.00 per household.

2      Additionally, the Settlement provides for injunctive relief that requires Iovate

3  to accurately test, measure and disclose the amount of protein in the Protein

4  Products by eliminating amino acids, creatine, and other nitrogen producing non-

5  protein compounds from its protein calculations.  This injunctive relief directly

6  addresses the allegations in this lawsuit and ensures that consumers will be able to

7  make informed purchasing decisions regarding the Protein Products.

8      When weighed against the risks, costs, delay, and uncertainties of continuing

9  the litigation, the Settlement constitutes an excellent result that is fair, adequate, and

10  reasonable, and comports with all of the criteria for preliminary approval.

11  Furthermore, the notice plan contemplated by the Settlement Agreement and

12  detailed herein complies with the applicable law and is the best notice practicable

13  for this case.  Accordingly, Plaintiff requests that the Court grant preliminary

14  approval to the proposed Settlement, direct distribution of notice to the Settlement

15  Class, and set a schedule for final approval of the Settlement.

16  **II.    <u>FACTUAL AND PROCEDURAL HISTORY</u>**

17      Plaintiff originally filed this class action lawsuit on March 10, 2015. (Dkt. 1

18  and Declaration of Daniel L. Warshaw ("Warshaw Decl."), ¶ 5.)  Plaintiff thereafter

19  filed the operative First Amended Complaint ("FAC") on April 10, 2015.  (Dkt. 16.)

20  The FAC alleges causes of action on behalf of Plaintiff and a putative nationwide

21  class of purchasers of Iovate Protein Products since March 10, 2011 for: (1)

22  violation of the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1770

23  *et seq.* ("CLRA"); (2) breach of express warranty; (3) negligent misrepresentation;

24  (4) violations of California's false advertising law, Cal. Bus. & Prof. Code §§ 17500

25  *et seq.* ("FAL"); (5) violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§

26  2301, *et seq.*; and (6) violation of California's unfair competition law, Cal. Bus. &

27  Prof. Code §§ 17200 *et seq.* ("UCL").

28      The crux of Plaintiff's lawsuit is that Iovate engaged in a practice commonly

1   referred to as "protein spiking," whereby it added creatine, amino acids, and other

2   non-protein ingredients in the Protein Products that falsely registered as proteins

3   under certain nitrogen based protein testing methods.  (Dkt. 15, ¶¶ 26-29.)  Plaintiff

4   alleged that by counting these non-protein ingredients as proteins, Iovate misled

5   consumers by artificially increasing the claimed protein content of the Protein

6   Products.  Plaintiff further alleged that Iovate misrepresented the qualities and

7   benefits of the Protein Products by double counting these amino acids and non-

8   protein compounds towards the amount of protein, and separately claiming that the

9   products contain these compounds "*in addition* to proteins."  (*Id., ¶* 30.)  Plaintiff

10  alleged that as a result of Iovate's material misrepresentations, Plaintiff and other

11  similarly situated consumers were induced into purchasing or paying more for

12  Iovate's Protein Products than they otherwise would have.

13      The parties exchanged Rule 26 initial disclosures on April 13, 2015 and

14  engaged in pre-certification discovery.  In response to Plaintiff's discovery requests,

15  Iovate has produced over 1,000 pages of documents, relating to the testing,

16  formulation, advertising, promotion, sales, protein content, and protein calculation

17  of the Protein Products.  (Warshaw Decl., ¶ 6.)  Plaintiff also took the deposition of

18  Iovate's Rule 30(b)(6) witness, Derek Smith, regarding these same subjects on April

19  30, 2015.  (*Id*., ¶ 7.)  Iovate took the deposition of Plaintiff James Eashoo on May 5,

20  2015.  (*Id*., ¶ 8.)

21      Iovate filed a Motion to Dismiss on May 11, 2015.  (Dkt. 32 and Warshaw

22  Decl., ¶ 9.)   After the Motion to Dismiss was filed, the parties continued to meet

23  and confer regarding the arguments raised in the Motion.  (Warshaw Decl., ¶ 9.)  As

24  a result of these discussions, and in an effort to narrow the issues before the Court,

25  on June 7, 2015, Iovate withdrew its initial Motion to Dismiss. (Dkt. 36 and

26  Warshaw Decl., ¶ 10.)  On June 19, 2015, Iovate filed a new Motion to Dismiss,

27  arguing that Plaintiff's claims are preempted by the regulations of the Federal Food,

28  Drug and Cosmetics Act ("FDCA") relating to the calculation of the protein content

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

1  in dietary supplements.  (Dkt. 38.)  Plaintiff filed his opposition to Iovate's second

2  Motion to Dismiss on July 27, 2015, (Dkt. 39 and Warshaw Decl., ¶ 11), and

3  Defendant filed its Reply on August 3, 2015.  (Dkt. 40.)  Defendant's Motion to

4  Dismiss was scheduled to be heard on August 17, 2015.  (Dkt. 39 & Warshaw Decl.,

5  ¶ 11.)

6      In May 2015, the parties attended an initial mediation session with Judge

7  Tevrizian.  (Warshaw Decl., ¶ 12.)  This initial mediation did not result in a

8  successful resolution of the case.  (*Id.*)  However, the parties, with the assistance of

9  Judge Tevrizian, continued to engage in settlement talks.  (*See id.*, ¶ 13.)  These

10 settlement discussions were robust and hotly contested, and at times it appeared that

11 a Settlement could not be achieved.  (*See id.*)

12     Under Judge Tevrizian's supervision, the parties ultimately reached

13 agreement on the essential terms of a settlement with a full and complete

14 understanding of the relevant facts and circumstances surrounding this litigation.

15 (*See Id.*)  The parties filed their Notice of Settlement on August 12, 2015.  (Dkt. 41

16 and Warshaw Decl., ¶ 15.)  The parties did not discuss or reach any agreement on

17 attorneys' fees, costs, or incentive awards prior to finalizing the terms of the relief to

18 the Class Members.  (Warshaw Decl., ¶ 14.)  The parties finalized the Settlement

19 Agreement on September 21, 2015.  (*See* Settlement Agreement, Warshaw Decl., at

20 Exh. 1.)

21 III.  **SUMMARY OF THE SETTLEMENT**

22     The Settlement Agreement provides for a Non-Reversionary Common Fund

23 that will be used to pay Class Member claims, administration costs, attorneys' fees,

24 and expenses in this litigation.  Under the Settlement Agreement, participating Class

25 Members will receive a **one hundred percent** refund up to $300 if they submit

26 receipts or proof of purchase, or up to $50 without any receipts or proof of purchase.

27 The Settlement Agreement also provides significant injunctive relief in the form of

28 modifications to the labels of Iovate's Protein Products.  The material terms of the

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

1   Settlement Agreement are set forth below.

2       A.    **Class Member Relief**

3          1.    **Monetary Relief**

4       Pursuant to the Settlement Agreement, Iovate will provide a refund to Class

5   Members who submit a timely and valid Claim Form.  Settlement Class Members

6   will be eligible to obtain monetary relief either with or without proof of purchase

7   paid from the Settlement Fund. The Settlement allows Class Members to choose one

8   of the following claim methods: (1) Settlement Class Members who submit valid

9   receipts showing purchases of one or more Protein Products will receive a 100%

10  refund of the amount(s) shown on the Receipt(s), up to $300 per household; (2)

11  Settlement Class Members who submit valid proof of purchase other than receipts

12  (e.g. Protein Product labels, SKUs, etc.), will receive a refund for the suggested

13  retail price of each Protein Product, up to $300 per household; or (3) Settlement

14  Class Members who do not provide a receipt or proof of purchase, but affirm under

15  penalty of perjury that they purchased a Protein Product during the Class Period,

16  will receive $10.00 per Protein Product, up to $50.00 per household.  (*See*

17  Settlement Agreement § 4.3.2.)

18      The Settlement Fund created by the Settlement Agreement is designed to

19  maximize the recovery of Class Members.  As such, any amounts remaining in the

20  fund after all claims have been paid will be distributed to Class Members who made

21  valid claims.  (*See* Settlement Agreement § 4.3.6.)   Under no circumstance will any

22  funds revert back to Iovate.  (*Id*.)

23         2.    **Injunctive Relief**

24      The Settlement also requires Iovate to provide injunctive relief to the Class by

25  modifying the testing, labeling, packaging, and advertising for its Protein Products

26  to insure that the nitrogen content attributed to amino acids, creatine, and other non-

27  protein substances therein are not included in the protein calculation.  (*See*

28  Settlement Agreement § 4.1.1.)  This injunctive relief is significant because it

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

1  directly addresses and remedies the central allegation in Plaintiff's lawsuit—that

2  nitrogen from amino acids, creatine, and other non-protein substances artificially

3  inflated the amount of claimed protein in the Protein Products.

4        **B.**      <u>**Narrowly Tailored Release**</u>

5        The Settlement Agreement contains a narrowly tailored Class Member release

6  that is specifically limited to the claims arising out of or relating to the Complaint

7  during the Class Period.  (*Id.* § 6.1.)  As set forth herein, these allegations are

8  limited to Plaintiff's claims that Iovate misrepresented and artificially inflated the

9  true protein content of the Protein Products.

10        **C.**      <u>**Cost of Administration and Class Notice**</u>

11        Under the Settlement Agreement, all costs and expenses of administering the

12  Settlement and providing Notice in accordance with the Preliminary Approval Order

13  shall be distributed from the Non-Reversionary Common Fund.  (Settlement

14  Agreement § 5.1.1.)  The parties have selected Rust Consulting, Inc. ("Rust") as the

15  claims administrator, and Kinsella Media, Inc. ("Kinsella") as the notice provider.

16  **IV.**    <u>**THE COURT SHOULD PRELIMINARILY APPROVE THE**</u>

17        <u>**SETTLEMENT**</u>

18        **A.**      <u>**Standard for Preliminary Approval**</u>

19        Rule 23(e) requires court approval of any settlement of claims of a settlement

20  class.  It is well-settled that there is "a strong judicial policy that favors settlements,

21  particularly where complex class action litigation is concerned."  *Class Plaintiffs v.*

22  *City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *see also Churchill Vill., L.L.C.*

23  *v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004); *In re Syncor ERISA Litig.*, 516

24  F.3d 1095, 1101 (9th Cir. 2008).

25        To grant preliminary approval of a class action settlement, a court need only

26  find that the settlement is within "the range of reasonableness" to justify publishing

27  and sending notice of the settlement to Class Members and scheduling final

28  approval proceedings.  *See In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078,

1079-80 (N.D. Cal. 2007); Newberg on Class Actions § 13:15 (5th ed.).  Preliminary approval should be granted where "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval."  *Vasquez v. Coast Valley Roofing, Inc.*, 670 F.Supp.2d 1114, 1125 (E.D. Cal. 2009).

The approval of a proposed class action settlement "is committed to the sound discretion of the trial judge."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).  In exercising this discretion, however, courts must give "proper deference to the private consensual decision of the parties" because "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."  *Id.* at 1027.

In making a preliminary determination of the fairness, reasonableness, and adequacy of a class action settlement, the trial court must balance a number of factors, including:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the Class Members to the proposed settlement.

*Churchill Vill.*, 361 F.3d at 575; *see also Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993).  At the preliminary approval stage, a final analysis of the settlement's merits is not warranted.  Instead, a more detailed assessment is

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

1  reserved for final approval, after class notice has been sent and Class Members have

2  had the opportunity to object to, or opt out of, the settlement.  *See* Moore's Fed.

3  Prac. § 23.165 (3d ed. 2009).

### B. The Settlement Provides Substantial Relief to the Class and is Well Within the Necessary Range of Reasonableness

The Settlement in this case is fair, reasonable, and adequate and should be approved by the Court because it provides substantial monetary relief and injunctive relief to Settlement Class Members.  Significantly, the Settlement Agreement will provide up to $300 for claimants with proof of purchase and up to $50 for claimants without proof of purchase, and requires Iovate to modify its testing protocols and procedures to ensure that creatine, amino acids, and other non-protein compounds are not counted towards the protein calculation.  As detailed below, the factors to be considered by the Court weigh heavily in favor of preliminary approval, because the Settlement Agreement adequately remedies the false advertising claims alleged by Plaintiff in this class action lawsuit.

### 1. The Strength of Plaintiff's Case Compared to the Risk, Expense, Complexity, and Likely Duration of Further Litigation

Although risks and expenses apply to any lawsuit, these elements were significant in this case and weigh strongly in favor of approving the Settlement.   As set forth above, Plaintiff's lawsuit alleges that Iovate misled consumers because the Protein Products contained less protein than the represented amount.  The basis for Plaintiff's lawsuit was that Iovate added or "spiked" its Protein Products with creatine, amino acids, and other nitrogen based non-protein additives, which falsely registered as proteins under certain testing methods.

Iovate vigorously defended its protein testing methodology and asserted that Plaintiff's claims were without merit.  Furthermore, Iovate brought a Motion to

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

1    Dismiss on grounds that its protein testing methods and procedures complied with

2    federal law under the FDCA.  Defendant argued that Plaintiff's lawsuit asserting

3    violations of California law were preempted by the FDCA and could not proceed

4    past the pleading stage.  Although Plaintiff believes that he would have defeated

5    Iovate's Motion to Dismiss, there was no guarantee that Plaintiff would have

6    overcome the preemption argument.  Even if Plaintiff did defeat Iovate's Motion to

7    Dismiss, Iovate was likely going to assert preemption as a defense to class

8    certification and trial.

9        If the parties did not reach a settlement, Iovate would have undoubtedly

10    asserted additional legal and factual defenses at class certification, summary

11    judgment, and trial.  Thus, there was no guarantee that Plaintiff would have been

12    able to certify a nationwide class and obtain any recovery on behalf of the Class

13    Members.  Even if Plaintiff prevailed at class ertification and trial, it was uncertain

14    whether he could recover damages in the full amount of the purchase price of the

15    Protein Products, as permitted under the Settlement.  *See Ivie v. Kraft Foods Global,*

16    *Inc.*, 2015 WL 183910, at * 2 (N.D. Cal. Jan. 14, 2015) (advocating for the price

17    premium model for damages rather than awarding the full purchase price of the

18    misbranded products).  As such, in the absence of the Settlement, Plaintiff would

19    have faced significant litigation risks and no substantial prospect of obtaining a

20    better result on behalf of the Class Members.

21        Plaintiff would have also incurred substantial litigation expenses in order to

22    litigate this case through class certification and trial.  In addition to ordinary

23    litigation expenses (e.g. filing fees, travel, court reporters, etc.), Plaintiff would have

24    had to incur expert fees and conduct substantial expert discovery in order to

25    demonstrate the Protein Products contained less protein than the amount claimed by

26    Iovate, and Plaintiff's claims could be litigated through trial on a class-wide basis.

27        Finally, since this case was in its early stages and the Court had not yet set a

28    trial date or pre-trial schedule, Plaintiff would have had to litigate this case for a

865070.5                                                    9

1   lengthy and unknown duration of time in order to prevail at class certification and

2   trial.  A successful result at trial may have also resulted in a post-trial appeal by

3   Iovate.  Therefore, this Settlement provides complete relief to the Class without the

4   delay and risk of further litigation.

5          In light of the above, the litigation risks, expense, complexity, and duration of

6   further litigation weigh heavily in favor of granting preliminary approval, especially

7   when weighed against the substantial monetary and injunctive relief provided by the

8   Settlement.

9                    **2.    The Amount Offered in Settlement**

10         The benefits offered by the Settlement Agreement also weigh heavily in favor

11  of preliminary approval.  As detailed above, the Settlement Agreement creates a

12  $2.5 million Non-Reversionary Common Fund that provides substantial monetary

13  relief to the Class Members.  Specifically, claimants can obtain a 100% refund up to

14  $300 if they provide receipts or proof of purchase of one or more of Iovate's Protein

15  Products.  (Settlement Agreement §§ 4.3.2.1, 4.3.2.2.)  This relief is arguably more

16  than claimants would have been able to obtain at trial, because it refunds the full

17  purchase price of the Protein Products, rather than limiting damages to the price

18  premium attributable to Iovate's alleged misrepresentations.  *See Ivie*, 2015 WL

19  183910, at * 2.

20         The Settlement Agreement also allows Class Members without any proof of

21  purchase to receive $10 per Protein Product, up to $50 per household, if they swear

22  or affirm under penalty of perjury that they purchased one or more Iovate Protein

23  Products during the Class Period.  (Settlement Agreement § 4.3.2.3.)  This option

24  for recovery is significant because it ensures that Class Members can participate in a

25  manner that is convenient and does not require them to maintain or submit proof of

26  past purchases.

27         Class Members will also benefit from injunctive relief that requires Iovate to

28  eliminate nitrogen attributed to amino acids, creatine, and other non-protein

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

1    ingredients, from the amount of protein claimed in the Protein Products.  (Settlement

2    Agreement § 4.1.1.)  This injunctive relief specifically remedies the

3    misrepresentations alleged in the FAC, and ensures that future consumers will make

4    informed decisions relating to the purchase of the Protein Products.

5         When viewed in light of the risks and costs of further litigation, these

6    remedies constitute an exceptional result for the Class and justify granting

7    preliminary approval of the Settlement.

8              **3.     The Risk of Maintaining Class Action Status Through Trial**

9         As set out more fully below, Plaintiff submits that this action could be

10   properly maintained as a class action.  However, Iovate would have undoubtedly

11   vigorously opposed class certification, and there was no guarantee that Plaintiff

12   would be able to certify the Class and maintain class action status through trial.

13   These arguments asserted by Iovate in opposition to class certification would have

14   likely included attacks on almost every factor for class certification, including

15   ascertainability, typicality, adequacy of representation, and the existence of common

16   issues.  Defendant would have likely argued that common issues did not

17   predominate because of variations in damages and Class Members' reliance on the

18   alleged protein content misrepresentations.  (*See* Dkt. 38, Motion to Dismiss, at p. 1

19   (discussing the purported benefits of the creatine and amino acids added to the

20   Protein Products.))  Plaintiff's ability to maintain class certification status through

21   trial may have also been impacted by an unforeseen intervening change in law.

22        Although Plaintiff is confident that this action could be certified as a class

23   action, the risk of maintaining class action status throughout trial weighs in favor of

24   preliminary approval.

25            **4.     The Extent of Discovery Completed and the Stage of the**
26                     **Proceedings**

27        Although the case is in its early stages, the parties have conducted sufficient

28   discovery to allow them to make an informed decision regarding the legal and

865070.5
11

factual sufficiency of the Settlement Agreement.  (Warshaw Decl., ¶ 16.)  Prior to filing this lawsuit, Plaintiff and his counsel conducted a thorough investigation into the facts of the case, including conducting independent testing of the Protein Products.  (*Id.,* ¶ 4.)  After Plaintiff filed the lawsuit, the parties exchanged Rule 26 initial disclosures on April 13, 2015.  (*Id.,* ¶ 6.)  Plaintiff then served Iovate with a Rule 30(b)(6) deposition notice and corresponding requests for production of documents relating to the testing, formulation, advertising, promotion, sales, protein content, and protein calculation of the Protein Products.  (*Id*., ¶ 6.)  In response to this discovery, Iovate produced, and Plaintiff reviewed, over 1,000 pages of documents.  (*Id*.)  On April 30, 2015, Plaintiff took the deposition of Iovate's Rule 30(b)(6) witness, Derek Smith, regarding the core facts and allegations underlying Plaintiff's claims.  (*Id*., ¶ 7.)  Iovate then took the deposition of Plaintiff on May 5, 2015.  (*Id*., ¶ 8.)

The Settlement Agreement further requires Iovate to produce additional confirmatory discovery regarding its sales revenue to verify the financial basis and assumptions in the Settlement Agreement.  (Settlement Agreement § 11.1.)  In addition to this formal discovery, the parties engaged in the informal exchange of relevant facts and information through the mediation and settlement negotiation process.  (Warshaw Decl., ¶ 13.)  This discovery and investigation provided the parties and Judge Tevrizian with sufficient evidence and understanding of the facts to evaluate the strengths and weaknesses of Plaintiff's claims, and make an informed decision to enter into the Settlement Agreement.  (*Id.*)

### 5. <u>The Experience and Views of Counsel</u>

Preliminary approval is further justified by the fact that Plaintiff and the Class are represented by counsel from Pearson, Simon & Warshaw, LLP, who have extensive experience in class action litigation, have negotiated numerous other class action settlements, and have the ability to litigate this case on a class-wide basis through trial if the parties failed to reach a fair settlement.  (Warshaw Decl., ¶ 17.)

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

1    Class Counsel were satisfied with the Settlement Agreement only after conducting

2    intensive settlement negotiations with the assistance of Judge Tevrizian and

3    thorough investigation into the factual and legal issues raised in this case.  (*Id.*, ¶¶

4    13, 16.)  Class Counsel drew on their considerable experience and expertise in

5    negotiating and evaluating the Settlement, and in determining that the Settlement

6    Agreement was reasonable and provided substantive relief to the Class.  (*See id.*, ¶¶

7    13, 17, 18, 23.)

8    **V.    THE COURT SHOULD CERTIFY A SETTLEMENT CLASS**

9    **FOR SETTLEMENT PURPOSES**

10         Before granting preliminary approval of a settlement, the Court must

11   determine that the proposed Settlement Class is a proper class for settlement

12   purposes.  Manual for Complex Litig. (4th ed. 2004) § 21.632; *Amchem Prods.*, 521

13   U.S. at 620.  Certification is appropriate where the proposed class and the proposed

14   class representatives meet the four requirements of Rule 23(a)—numerosity,

15   commonality, typicality and adequacy of representation—and one of the three

16   requirements of Rule 23(b).

17         Here, Plaintiff seeks certification pursuant to Rules 23(a) and 23(b)(3) on

18   behalf of the Settlement Class, consisting of: "all persons in the United States of

19   America who purchased one or more of Defendant's Protein Products at any time

20   during the [March 10, 2011 and the date of Preliminary Approval]. Excluded from

21   the Settlement Class are any officers, directors, or employees of Iovate, and the

22   immediate family member of any such person.  Also excluded from the Settlement

23   Class is any judge who may preside over this case."  (Settlement Agreement §§ 1.9,

24   1.41.)  For the reasons set forth below, all of the required elements of class

25   certification are satisfied.

26         **A.    The Requirements of Rule 23(a) Are Satisfied**

27         "Rule 23(a) ensures that the named plaintiffs are appropriate representatives

28   of the class whose claims they wish to litigate."  *Wal-Mart Stores, Inc. v. Dukes*, 131

865070.5

13

S. Ct. 2541, 2550 (2011).  Under Rule 23(a), the party seeking certification must demonstrate that:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

### 1.    <u>Numerosity</u>

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "Where the exact size of the class is unknown, but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied."  *In re Abbott Labs. Norvir Anti-trust Litig.*, Case Nos. C 04-1511 CW, C 04-4203 CW, 2007 WL 1689899, at *6 (N.D. Cal. June 11, 2007).  Here, there are at least thousands of Settlement Class Members, which easily satisfies the numerosity requirement.

### 2.    <u>Commonality</u>

Rule 23(a)(2) requires that there be "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  "Commonality requires the plaintiff to demonstrate that the Class Members 'have suffered the same injury.'"  *Dukes*, 131 S. Ct. at 2551 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)).  Class members' claims "must depend upon a common contention . . . that is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Id.*  "What matters to class certification . . . is not the raising of common 'questions'— even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation."  *Id.*

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

Here, the claims of all Class Members depend upon a common contention that Iovate misrepresented the true amount of protein content in Iovate's Protein Products by engaging in protein "spiking." All Class Members' claims are based upon the same alleged conduct by Iovate, resulting in the litigation of common legal issues. Further, the common questions of law and fact presented in this case could only be efficiently resolved in a classwide proceeding that would generate common answers to those questions.

### 3. **Typicality**

Rule 23(a)(3) is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent Class Members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other Class Members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal quotations omitted).

Here, Plaintiff is a consumer who purchased the Protein Products as a dietary supplement. Like similarly situated Class Members, Plaintiff relied on Iovate's representations about the protein content and composition of its Protein Products in making his purchase. Plaintiff's experience is not unique, but rather illustrative of the experience of other Class Members. Accordingly, Plaintiff's claims are typical of the claims of the Class.

### 4. **Adequacy of Representation**

Rule 23(a)(4) permits class certification only if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "This factor requires: (1) that the proposed representative plaintiffs do not have

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

1   conflicts of interest with the proposed class, and (2) that Plaintiffs are represented by

2   qualified and competent counsel." *Dukes*, 603 F.3d at 614, *rev'd on other grounds*,

3   131 S. Ct. 2541 (2011) (quoting *Hanlon*, 150 F.3d at 1020).

4       Plaintiff does not have any conflicts of interest with the proposed Class.

5   Plaintiff's claims are identical to the claims of other Class Members and arise from

6   the same conduct by Iovate.  Plaintiff and other Class Members have suffered the

7   same injury, and Plaintiff seeks relief equally applicable and beneficial to the Class.

8   Further, Plaintiff is represented by qualified and competent counsel who have the

9   experience and resources necessary to vigorously pursue this action.  (*See* Warshaw

10   Decl., ¶ 17 & Exh. 2 ("Firm Resume").)  Plaintiff and his counsel are able to fairly

11   and adequately represent the interests of the Class.

12   **B.    The Requirements of Rule 23(b)(3) Are Satisfied**

13       In addition to meeting the prerequisites of Rule 23(a), a class action must

14   satisfy at least one of the three conditions of Rule 23(b).  Plaintiff submits that the

15   Settlement Class satisfies Rule 23(b)(3).  Under Rule 23(b)(3), a class action may be

16   maintained if: "[1] the court finds that the questions of law or fact common to Class

17   Members predominate over any questions affecting only individual members, and

18   [2] that a class action is superior to other available methods for fairly and efficiently

19   adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

20       Here, common questions predominate over any individualized inquiries

21   relating to Class Members.  Plaintiff's claims are based upon the same conduct of

22   Iovate: misrepresenting the true protein content and composition of their Protein

23   Products.  The class claims predominate over any evidential inquiry as the core

24   misrepresentation relates to the fundamental characteristics of the Protein Products,

25   the amount of protein contained therein.  Consumers purchase Protein Products for

26   one reason, protein supplementation.  The questions of law and fact surrounding this

27   ultimate issue far outweigh any individualized issues regarding Class Members.

28       Therefore, this action is appropriate for class certification for settlement

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

purposes, embodying all the hallmarks, both in form and in substance, of class actions routinely certified in this Circuit.

## VI.    <u>THE SETTLEMENT PROVIDES PROPER NOTICE TO THE CLASS</u>

Rule 23(e)(1) states that "[t]he court must direct notice in a reasonable manner to all Class Members who would be bound by a proposed settlement, voluntary dismissal, or compromise." Notice to the class must be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997); *Mullane v. Cen. Hanover Bank & Trust Co.*, 229 U.S. 306, 314 (1950). The notice must contain the following information: (1) the nature of the action; (2) the definition of the class; (3) the class claims, issues, or defenses; (4) that any class member may appear at the fairness hearing through an attorney; (5) that the court will exclude from the class any member who requests exclusion; (6) the time and manner for requesting exclusion; and (7) the binding effect of a judgment on Class Members. Fed. R. Civ. P. 23(c)(2)(B).

Where the identity of specific Class Members is not reasonably available, notice by publication is an acceptable method of providing notice. *See In re Tableware Antitrust Litig.*, 484 F.Supp.2d at 1080 (citing *Manual for Complex Litigation* § 21.311 (4th ed. 2004)); Cal. Civ. Code § 1781 (authorizing notice by publication under the CLRA "if personal notification is unreasonably expensive or it appears that all members of the class cannot be notified personally"). Here, Iovate did not directly sell its Protein Products to Class Members so it does not possess contact information for the Class Members.

The primary means of notice in this case will be notice by publication in print format and via the Internet. Class Counsel and Kinsella have determined that internet advertising is the best method to provide targeted notice to the Class, which

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

1 is comprised of younger and Internet savvy consumers. The advertising will be

2 targeted to consumers who are interested in health, fitness, and exercising. The

3 Internet-based portion of the notice plan calls for targeted Internet banner

4 advertisements running for four weeks on several popular health and fitness

5 websites, including: (1) Men's Health; (2) Men's Fitness; (3) Muscle & Fitness; (4)

6 Muscle & Fitness Hers; and (5) Flex. Targeted notice will also be provided through

7 Facebook to individuals who have expressed an interest in health and fitness. By

8 advertising on these websites, the notice is expected to result in 50 million

9 impressions[3] that are targeted to reach the Class Members.

10    In addition to Internet advertising, the notice plan calls for the insertion of

11 quarter-page notices Monday through Thursday for four consecutive weeks in *USA*

12 *Today's* Los Angeles and San Francisco regional editions. This print publication

13 plan satisfies the publication requirements of the CLRA.

14    Plaintiff's counsel will also issue an informational press release over PR

15 Newswire's US1 and National Hispanic newslines. The US1 release will be issued

16 broadly to more than 15,000 media outlets, including newspapers, magazines,

17 national wire services, television, radio, and online media in all 50 states. The

18 Hispanic newsline reaches over 7,000 U.S. Hispanic media contacts including

19 online placement of approximately 100 Hispanic websites nationally.

20    The content of the notice complies with the requirements of Rule 23(c)(2)(B).

21 As seen in both the Long Form and Short Form notices attached to the Settlement

22 Agreement, the notice describes the nature of the action, states the definition of the

23 class, explains the binding effect of the judgment on Class Members, and provides

24

25

26 [3] "Impressions" are defined as the number of times a user was exposed to the advertisement.

27

28

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

865070.5

18

1  all of the necessary information for Class Members to appear at the fairness hearing,

2  file a claim, object to the settlement, and/or exclude themselves from the Class.

3       Accordingly, the Court should approve the proposed notice plan.

4  **VII.**   **THE COURT SHOULD SET A FINAL APPROVAL HEARING**

5       **SCHEDULE**

6       The last step in the settlement approval process is the final approval hearing,

7  at which the Court may hear all evidence and argument necessary to evaluate the

8  proposed settlement.  At that hearing, proponents of the settlement may explain and

9  describe their terms and conditions and offer argument in support of settlement

10  approval.  Members of the Class—or their counsel—may be heard in support of or

11  in opposition to the settlement.  Plaintiff proposes the following schedule for final

12  approval of the settlement:

| Date | Action |
|---|---|
| Within 30 days after entry of the Order Granting Preliminary Approval | Commencement of Notice to the Class Members ("Notice Date") |
| 45 days after the Notice Date | Deadline to file Plaintiff's Motion for Attorneys' Fees, Costs, and Incentive Award |
| 60 days after the Notice Date | Deadline for Class Members to file a claim, opt-out, or object to the Settlement Agreement and Plaintiff's Motion for Attorneys' Fees, Costs, and Incentive Award |
| 75 days after the Notice Date | Deadline to file Plaintiff's Motion for Final Approval of the Settlement Agreement |
| 75 days after the Notice Date | Deadline for the parties to respond to any objection to the Settlement Agreement and/or Plaintiff's Motion for Attorneys' Fees, Costs, and Incentive Award |
| 100 days after the Notice Date | Final approval/fairness hearing |

/ / /

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

## VIII.  ATTORNEYS' FEES AND COSTS AND ENHANCEMENT AWARDS

The Settlement Agreement states that Class Counsel may apply to the Court for an award of attorneys' fees and costs in an amount not to exceed twenty-five percent (25%) of the $2.5 million Non-Reversionary Common Fund (i.e. up to $625,000) and expenses and verified costs in an amount not to exceed $15,000.00. (Settlement Agreement, § 9.1.)  The Settlement Agreement also allows Plaintiff to apply to the Court for an enhancement award of $5,000.  (Settlement Agreement, § 9.2.)  The enhancement award is designed to reward the class representative for his service to the Class, and is consistent with Ninth Circuit precedent that holds enhancement awards cannot be conditioned on class representatives' support for the settlement.  *See Radcliffe v. Experian Info. Solutions, Inc.*, 715 F.3d 1157, 1161 (9th Cir. 2013).

The Notice will explain the forthcoming motion for attorneys' fees, costs, and enhancement award so that Class Members will be aware of the proposed requests. The motion for attorneys' fees, costs, and enhancement awards will be filed a reasonable time before the deadline for objections.  *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 995 (9th Cir. 2010) (holding that Class Members should have adequate time to review motion for attorneys' fees before deadline for objections).

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## IX.    <u>CONCLUSION</u>

Based on the foregoing, Plaintiff respectfully requests that the Court grant preliminary approval of the Settlement Agreement, approve the proposed notice plan, and establish a final approval hearing schedule.


DATED: October 9, 2015             **PEARSON, SIMON & WARSHAW, LLP**
                                   DANIEL L. WARSHAW
                                   BOBBY POUYA
                                   MATTHEW A. PEARSON
                                   ALEXANDER R. SAFYAN


                                   By:    */s/ Daniel L. Warshaw*
                                   _____
                                          DANIEL L. WARSHAW
                                   Attorneys for Plaintiff James Eashoo,
                                   individually and on behalf of all others
                                   similarly situated

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

865070.5

21