DANIEL L. WARSHAW (Bar No. 185365)
  dwarshaw@pswlaw.com
BOBBY POUYA (Bar No. 245527)
  bpouya@pswlaw.com
MATTHEW A. PEARSON (Bar No. 291484)
  mapearson@pswlaw.com
ALEXANDER R. SAFYAN (Bar No. 277856)
  asafyan@pswlaw.com
**PEARSON, SIMON & WARSHAW, LLP**
15165 Ventura Boulevard, Suite 400
Sherman Oaks, California 91403
Telephone: (818) 788-8300
Facsimile:  (818) 788-8104

Attorneys for Plaintiff James Eashoo,
individually and on behalf of all others
similarly situated

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES EASHOO, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>    vs.<br><br>IOVATE HEALTH SCIENCES U.S.A., INC.,<br><br>        Defendant. | CASE NO. 2:15-cv-01726-BRO-PJW<br><br>**CLASS ACTION**<br><br>**NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, LITIGATION COSTS, AND INCENTIVE AWARD; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:    April 4, 2016<br>Time:    1:30 p.m.<br>Crtrm:  14 – Spring Street<br>Judge:   Hon. Beverly Reid O'Connell |

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

867395.2

TO THE COURT AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on April 4, 2016 at 1:30 p.m., or as soon thereafter as the matter may be heard in the Courtroom of the Honorable Beverly Reid O'Connell, United States District Court, Central District of California, Los Angeles Division, Plaintiff James Eashoo ("Plaintiff") will and hereby moves the Court, pursuant to Federal Rules of Civil Procedure 23(h) and 54(d)(2) and California Code of Civil Procedure § 1021.5, for an order approving and awarding attorneys' fees, litigation costs and expenses, and the incentive award.  By way of this motion, Plaintiff seeks:

1.    $625,000 in attorneys' fees to Pearson, Simon & Warshaw, LLP ("PSW");

2.    $8,013.95 in verified litigation costs and expenses to PSW; and

3.    $5,000 in an incentive award to the class representative James Eashoo.

This motion is made on the grounds that: (1) Plaintiff's requested attorneys' fees are fair and reasonable in light of the efforts of PSW in obtaining the settlement herein; (2) the requested attorneys' fees comport with the applicable law; (3) the expenses for which reimbursement is sought were reasonably and necessarily incurred in connection with the prosecution of this action; and (4) a reasonable payment to the current class representative for his efforts on behalf of the Class is warranted and appropriate.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

867395.2

ii

1    This motion is based upon[1] this Notice of Motion, the accompanying

2    Memorandum of Points and Authorities, the accompanying declaration of Daniel L.

3    Warshaw, the pleadings and records on file herein, and upon such additional

4    evidence or argument as may be accepted by the Court at or prior to the hearing.

5

6    DATED: January 25, 2016          **PEARSON, SIMON & WARSHAW, LLP**
                                      DANIEL L. WARSHAW
7                                     BOBBY POUYA
8                                     MATTHEW A. PEARSON
                                      ALEXANDER R. SAFYAN
9

10

11                                    By:    */s/ Daniel L. Warshaw*
                                             DANIEL L. WARSHAW
12                                    Attorneys for Plaintiff James Eashoo,
13                                    individually and on behalf of the class

14

15

16

17

18

19

20

21

22

23

24

25    _____

26    [1] Note that Plaintiff is not including a proposed order pursuant to the Court's Civil
27    Motion and Trial Order.

28

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

# **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ................................................................................ 1

II.  PROCEDURAL HISTORY .................................................................. 2

III. THE REQUESTED ATTORNEYS' FEES ARE REASONABLE AND JUSTIFIED AND SHOULD BE APPROVED BY THE COURT ................. 3

A.   California Law Controls Plaintiff's Fee Request ......................... 3

B.   California and Federal Law Indicate that the Court Should Apply the Percentage-of-Fund Method to Calculate Plaintiff's Attorneys' Fees ............................................................................. 4

C.   Plaintiff Seeks the Ninth Circuit's Benchmark of 25% of the Fund ............................................................................................. 6

1.   PSW Obtained an Extraordinary Settlement for the Class ........... 7

2.   The Case Involved Complex Legal Issues and Significant Risks, Requiring Tremendous Skill and Superior Work to Overcome ............................................................................... 8

3.   The Non-Monetary Benefits of the Settlement Are Substantial ............................................................................. 9

4.   PSW Took on a Heavy Contingent Risk, Advanced All Litigation Costs, and Worked on this Case Without Any Guarantee of Success ......................................................... 10

5.   The Requested Fee is Well in Line with the Range of Percentage Fee Awards Approved by the Ninth Circuit and Its District Courts ........................................................ 11

D.   A Lodestar Cross-Check Confirms that Plaintiff's Requested 25% Fee Is Reasonable ............................................................. 12

1.   PSW's Lodestar Is Reasonable and Compensable ................... 12

2.   PSW's Hourly Rates Are Reasonable and Have Been Approved by Other Courts .................................................... 14

3.   A Lodestar Multiplier Is Warranted Based on PSW's Handling of this Case and the Results Obtained. .................. 15

E.   Plaintiff Should Be Reimbursed for Litigation Costs ................ 16

F.   The Court Should Award an Incentive Award to the Class Representative ............................................................................ 17

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

867395.2

i

1

IV.    CONCLUSION ................................................................................................ 17

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, LITIGATION COSTS, AND INCENTIVE
AWARD; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

**<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

Cases

*Bank of Am. v. Micheletti Family P'ship,*
   *No*. C 08–2902 JSW (JL), 2009 WL 1110830, (N.D. Cal. Feb. 26, 2009) ......... 3

*Barjon v. Dalton,*
   132 F. 3d 496 (9th Cir. 1997) ................................................................ 14

*Been v. O.K. Industries, Inc.,*
   2011 WL 4478766, (E.D. Okla. 2011) ................................................... 15

*Chalmers v. City of Los Angeles,*
   796 F. 2d 1205 (9th Cir. 1986) ............................................................. 14

*Children's Hosp. & Med. Ctr. v. Bunt,*
   97 Cal. App. 4th 740 (2002) ................................................................. 14

*City of Oakland v. Oakland Raiders,*
   203 Cal. App. 3d 78 (1988) ....................................................... 12, 14, 15

*Craft v. Cnty. of San Bernardino,*
   624 F. Supp. 2d 1113 (C.D. Cal. 2008) ........................................... passim

*Davis v. J.P. Morgan Chase & Co.,*
   827 F. Supp. 2d 172 (W.D.N.Y. 2011) .................................................. 15

*Fischer v. SJB-P.D. Inc.,*
   214 F. 3d 1115 (9th Cir. 2000) ............................................................. 13

*Fraley v. Facebook, Inc.,*
   No. C 11-1726 RS, 2013 WL 4516806, (N.D. Cal. Aug. 26, 2013), *aff'd*
   No. 13-16819, 2016 WL 145984 (9th Cir. Jan. 6, 2016) .................................. 4

*Garner v. State Farm Mut. Auto. Ins. Co.,*
   2010 WL 1687829 (N.D. Cal. Apr. 22, 2010) ........................................ 7, 9, 10

*Glass v. UBS Fin. Servs., Inc.,*
   331 Fed. Appx. 452 (9th Cir. 2009) ...................................................... 11

*Hanlon v. Chrysler Corp.,*
   150 F. 3d 1011 (9th Cir. 1998) .......................................................... 5, 6

NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, LITIGATION COSTS, AND INCENTIVE
AWARD; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

*Hensley v. Eckerhart*,
　461 U.S. 424 (1983) ........................................................................................ 13

*In re Bluetooth Headset Prods. Liab. Litig.*,
　654 F. 3d 935 (9th Cir. 2011) ..................................................................5, 12, 15

*In re Businessland Sec. Litig.*,
　No. 09-CV-20476-RFP, 1991 WL 427887, (N.D. Cal. June 14, 1991) ............ 16

*In re Consumer Privacy Cases*,
　175 Cal. App. 4th 545 (2009) ............................................................................ 5

*In re Oracle Securities Litig.*,
　852 F. Supp. 1437 (N.D. Cal. 1994) ................................................................... 5

*In re Pacific Enterprises Sec. Litig.*,
　47 F. 3d 373 (9th Cir. 1995) ............................................................................ 11

*In re Rite Aid Corp. Secs. Litig.*,
　362 F. Supp. 2d 587 (E.D. Pa. 2005) ................................................................ 15

*In re Rite Aid Corp. Secs. Litig.*,
　396 F. 3d 294 (3rd Cir. 2005) ............................................................................ 5

*In re Sutter Health Uninsured Pricing Cases*,
　171 Cal. App. 4th 495 (2009) .......................................................................... 13

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
　19 F. 3d 1291 (9th Cir. 1994) ..............................................................5, 10, 13

*Johansson-Dohrmann v. Cbr Sys., Inc.*,
　No. 12-cv-1115-MMA, 2013 WL 3864341, (S.D. Cal. Jul. 24, 2013) ............... 6

*Kanawi v. Bechtel Corp.*,
　No. C 06-05566 CRB, 2011 WL 782244 (N.D. Cal. Mar. 1, 2011) ............. 9, 10

*Ketchum v. Moses*,
　24 Cal. 4th 1122 (2001) .............................................................................12, 15

*Kona Enter., Inc. v. Estate of Bernice Pauahi Bishop*,
　229 F. 3d 877 (9th Cir. 2000) ............................................................................ 4

*Lopez v. Youngblood*,
　No. CV-F-07-0474 DLB, 2011 WL 10483569, (E.D. Cal. Sept. 2, 2011) .......... 5

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, LITIGATION COSTS, AND INCENTIVE
AWARD; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

*Maley v. Del Global Technologies Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002) ......................................................... 15

*Mills v. Electric Auto-Lite Co.*,
   396 U.S. 375 (1970) ..................................................................................... 16

*Palmer v. Nigaglioni*,
   508 Fed. Appx. 658 (9th Cir. 2013) (28%) ................................................ 11

*Pincay Investments Co. v. Covad Commc'ns Grp.*,
   90 Fed. Appx. 510 (9th Cir. 2004) (25%) ................................................... 11

*Rodriguez v. West Publ'g Corp.*,
   563 F. 3d 948 (9th Cir. 2009) .................................................................... 17

*Serrano v. Priest*,
   20 Cal. 3d 25 (1977) ............................................................................... 4, 15

*Six (6) Mexican Workers v. Arizona Citrus Growers*,
   904 F. 2d 1301 (9th Cir. 1990) ........................................................... passim

*Staton v. Boeing Co.*,
   327 F. 3d 938 (9th Cir. 2003) ............................................................. 6, 9, 17

*Stokus v. Marsh*,
   217 Cal. App. 3d 647 (1990) ...................................................................... 13

*The People ex rel. Dep't. of Transp. v. Yuki*,
   31 Cal. App. 4th 1754 (1995) ..................................................................... 15

*Torrisi v. Tucson Elec. Power Co.*,
   8 F. 3d 1370 (9th Cir. 1993) ...................................................................... 11

*Van Vranken v. Atlantic Richfield Co.*,
   901 F. Supp. 294 (N.D. Cal. 1995) ............................................................ 15

*Vedachalam v. Tata Consultancy Servs., Ltd.*,
   No. C 06-0963 CW, 2013 WL 3941319, (N.D. Cal. July 18, 2013) .............. 11

*Vizcaino v. Microsoft Corp.*,
   290 F. 3d 1043 (9th Cir. 2002) ........................................................... passim

*Vo v. Las Virgines Mun. Water Dist.*,
   79 Cal. App. 4th 440 (2000) .................................................................. 12, 13

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, LITIGATION COSTS, AND INCENTIVE AWARD; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

*Webb v. Bd. of Edu.*,
    471 U.S. 234 (1985) ............................................................................ 13

*Weeks v. Baker & McKenzie*,
    63 Cal. App. 4th 1128 (1998) ............................................................ 12

*Wershba v. Apple Computer, Inc.,*
    91 Cal. App. 4th 224 (2001) ........................................................ 13, 15

*Williams v. Gerber Prods. Co.*,
    552 F. 3d 934 (9th Cir. 2008) .............................................................. 8

*X-Ray Film Antitrust Litig.*,
    No. 960886, 1998 WL 1031494 (Cal. Sup. Ct. Oct. 22, 1998) .......... 16

STATUTES

Cal. Bus. & Prof. Code §§ 17200, *et seq.* ................................................... 3

Cal. Bus. & Prof. Code §§ 17500, *et seq.* ................................................... 2

Cal. Code Civ. P. § 1021.5 ........................................................................... 4

Cal. Civ. Code §§ 1770, *et seq.* ................................................................... 2

Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq* ....................... 3

Nutrition Labeling and Education Act of 1990, Pub. L. No. 101-535, 104 Stat.
    2353 (1990), 21 U.S.C. §§ 343(q), (r), 343-1(a)(4), (5)....................... 8

OTHER AUTHORITIES

*Manual for Complex Litigation*, §14.121 (4th ed. 2004) ...................... 5, 7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, LITIGATION COSTS, AND INCENTIVE AWARD; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiff filed the underlying class action lawsuit alleging that Defendant Iovate Health Sciences U.S.A., Inc. ("Iovate") "spiked" its protein supplements with non-protein compounds to artificially inflate the claimed amount of protein contained therein.  Specifically, Plaintiff alleged that Iovate engaged in a practice commonly referred to as "protein spiking," whereby it added creatine, amino acids, and other non-protein ingredients to its Protein Products[2,3] that falsely registered as proteins under certain nitrogen-based protein testing methods.  (Dkt. 15, ¶¶ 26-29.)

In pursuing this lawsuit, Plaintiff faced complex legal challenges, expenses related to discovery and experts, and genuine uncertainty as to the outcome of the matter.  Accordingly, Plaintiff and Iovate engaged in arm's-length settlement negotiations with the assistance of a respected and experienced neutral, the Honorable Dickran M. Tevrizian (Ret.).  As a result of these settlement negotiations, Plaintiff obtained a nationwide class action Settlement, which provides substantial monetary and injunctive relief to purchasers of Iovate protein supplements and adequately remedies the harm alleged by Plaintiff.  The Settlement directly addresses Plaintiff's concerns with Iovate's conduct by: (1) creating a common fund of $2,500,000 from which Class Members can file a claim to refund the purchase price of the Protein Products (with limitations based on the level of proof) for the

---

[2] All capitalized terms herein shall have the definitions set forth in the Settlement Agreement unless otherwise stated.  The Settlement Agreement is attached as Exhibit 1 to the previously filed Declaration of Daniel L. Warshaw in Support of the Motion for Preliminary Approval, Dkt. 44-1 ("Settlement Agreement").

[3] The term "Protein Products" is defined in the Settlement Agreement and herein as any of the protein supplements distributed by Defendant under any brand name, including MuscleTech, Six Star, Epic, or fuel:one during the Class Period. (Settlement Agreement, § 1.32).

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

867395.2

1

period March 10, 2011 through November 10, 2015; and (2) ensuring that Iovate will correct the labeling, advertising, and marketing of its Protein Products to accurately reflect the amount of protein in the products. This is an extraordinary result for the Class as it provides Class Members with a *one hundred percent refund* up to $300 if they submit receipts or proof of purchase, or up to $50 without any receipts or proof of purchase.

Through this motion, Plaintiff requests that the Court approve his application for $625,000 in attorneys' fees, $8,013.95 in litigation costs and expenses, and $5,000 as an incentive award. The requested attorneys' fees represent 25% of the Settlement Fund (not taking into account the significant injunctive relief), which is the standard "benchmark" in the Ninth Circuit for common fund cases. The reasonableness of Plaintiff's fee request is confirmed by a lodestar cross-check, which reflects a modest lodestar multiplier of 1.39 based on PSW's historical hourly rates. Plaintiff's requested litigation costs and expenses, which were advanced by PSW, were reasonably incurred and necessary to achieve the tremendous result in this case. Finally, Plaintiff's requested incentive award is reasonable to reward him for the work he performed and his service to the Class. As detailed herein, Plaintiff's request for attorneys' fees, litigation costs, and incentive award comports with the applicable law and is well-justified by the facts of this case.

## II.   PROCEDURAL HISTORY

Plaintiff originally filed this class action lawsuit on March 10, 2015. Dkt. 1 and Declaration of Daniel L. Warshaw ("Warshaw Decl."), ¶ 5. Plaintiff thereafter filed the operative First Amended Complaint ("FAC") on April 10, 2015. Dkt. 16. The FAC alleges causes of action on behalf of Plaintiff and a putative nationwide class of purchasers of Iovate Protein Products since March 10, 2011 for: (1) violation of the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1770, *et seq.*; (2) breach of express warranty; (3) negligent misrepresentation; (4) violations of California's false advertising law, Cal. Bus. & Prof. Code §§ 17500, *et*

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

1  *seq.*; (5) violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.;

2  and (6) violation of California's unfair competition law, Cal. Bus. & Prof. Code §§

3  17200, *et seq*.

4       In May 2015, the parties attended an initial mediation session with Judge

5  Tevrizian.  Warshaw Decl., ¶ 7.  This initial mediation did not result in a successful

6  resolution of the case.  *Id*.  However, the parties, with the assistance of Judge

7  Tevrizian, continued to engage in settlement talks.  *Id*., ¶ 8.  These settlement

8  discussions were robust and hotly contested, and at times it appeared that a

9  Settlement could not be achieved.  *Id*.

10       Under Judge Tevrizian's supervision, the parties ultimately reached

11 agreement on the essential terms of a settlement with a full and complete

12 understanding of the relevant facts and circumstances surrounding this litigation.  *Id*.

13 The parties filed their Notice of Settlement on August 12, 2015.  Dkt. 41.  The

14 parties did not discuss or reach any agreement on attorneys' fees, costs, or incentive

15 awards prior to finalizing the terms of the relief to the Class Members.  Warshaw

16 Decl., ¶ 12.  The parties finalized the Settlement Agreement on September 21, 2015.

17 *See generally* Settlement Agreement.  On October 9, 2015, Plaintiff filed his Motion

18 for Preliminary Approval of the Settlement, and the Court granted preliminary

19 approval on November 10, 2015.  Warshaw Decl., ¶¶ 13, 14.

20 **III.   THE REQUESTED ATTORNEYS' FEES ARE REASONABLE AND**
        **JUSTIFIED AND SHOULD BE APPROVED BY THE COURT**
21

22       **A.    California Law Controls Plaintiff's Fee Request**

23       "Federal courts are required to apply state law in diversity actions with regard

24 to the allowance or disallowance of attorney fees."  *Bank of Am. v. Micheletti*

25 *Family P'ship, No*. C 08–2902 JSW (JL), 2009 WL 1110830, at *2 (N.D. Cal. Feb.

26 26, 2009) (quoting *Michael–Regan Co., Inc. v. Lindell*, 527 F. 2d 653, 656 (9th Cir.

27 1975)); *Vizcaino v. Microsoft Corp.*, 290 F. 3d 1043, 1047 (9th Cir. 2002).  A

28 federal court sitting in diversity applies the law of the forum state regarding attorney

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

1  fee awards.  *See, e.g.*, *Kona Enter., Inc. v. Estate of Bernice Pauahi Bishop*, 229 F.

2  3d 877, 883 (9th Cir. 2000).  Because this is a diversity case brought pursuant to

3  California law, California law governs Plaintiff's request for attorneys' fees.[4]

4       Under California law, Plaintiff may recover attorneys' fees in this case

5  pursuant to either the "common fund" or the "substantial benefit" doctrines.  Both of

6  these doctrines are non-statutory exceptions to the general American rule regarding

7  attorneys' fees derived from case law.  *Serrano v. Priest*, 20 Cal. 3d 25, 34 (1977);

8  Cal. Code Civ. P. § 1021.5.  Under the "common fund" rule, "when a number of

9  persons are entitled in common to a specific fund, and an action brought by a

10 plaintiff or plaintiffs for the benefit of all results in the creation or preservation of

11 that fund, such plaintiff or plaintiffs may be awarded attorney's fees out of the

12 fund." *Serrano*, 20 Cal. 3d at 34-38.  Under the "substantial benefit" rule, "when a

13 class action . . . results in the conferral of substantial benefits, whether of a

14 pecuniary or nonpecuniary nature, . . . [the] defendant may, in the exercise of the

15 court's equitable discretion, be required to yield some of those benefits in the form

16 of an award of attorney's fees." *Id.* at 34; 38-42.  Plaintiff is entitled to recover

17 attorneys' fees under either doctrine because he has created a common fund for the

18 benefit of the Class and has conferred substantial benefits upon the Class Members.

19       **B.    California and Federal Law Indicate that the Court Should Apply
          the Percentage-of-Fund Method to Calculate Plaintiff's Attorneys'
20        Fees**

21

22       In common fund cases, under both California and federal law, courts have

23 discretion to apply either a percentage-of-the-fund method or the lodestar method

24 for calculating an attorneys' fee award.  *Fraley v. Facebook, Inc.*, No. C 11-1726

25 _____

26 [4] As explained herein, the analysis under federal and California law is essentially the
   same in a common fund case such as this, and the requested amounts here are
27 reasonable and appropriate under either law.

28

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

1    RS, 2013 WL 4516806, at *2 (N.D. Cal. Aug. 26, 2013), *aff'd* No. 13-16819, 2016

2    WL 145984 (9th Cir. Jan. 6, 2016) (citing Fischel v. Equitable Life. Assur. Soc'y,

3    307 F. 3d 997, 1006 (9th Cir. 2002)); *see also Vizcaino*, 290 F. 3d at 1047; *In re*

4    *Consumer Privacy Cases*, 175 Cal. App. 4th 545, 558 (2009); *In re Wash. Pub.*

5    *Power Supply Sys. Sec. Litig.*, 19 F. 3d 1291, 1295 (9th Cir. 1994) ("*WPPSS*"). The

6    choice "depends on the circumstances." *Six (6) Mexican Workers v. Arizona Citrus*

7    *Growers*, 904 F. 2d 1301, 1311 (9th Cir. 1990). Although the Court has discretion

8    to use either method, the Ninth Circuit has recognized that in common fund cases,

9    "the primary basis of the fee award remains the percentage method." *Vizcaino*, 290

10   F. 3d at 1050 (emphasis added); *Lopez v. Youngblood*, No. CV-F-07-0474 DLB,

11   2011 WL 10483569, at *3 (E.D. Cal. Sept. 2, 2011); *Craft v. Cnty. of San*

12   *Bernardino*, 624 F. Supp. 2d 1113, 1116, 1123-24 (C.D. Cal. 2008) (citing

13   *Vizcaino*)). Indeed, "the vast majority of courts of appeals now permit or direct

14   district courts to use the percentage-fee method in common-fund cases." *Manual*

15   *for Complex Litigation*, § 14.121 (4th ed. 2004) (citing, e.g., *WPPSS*, 19 F. 3d at

16   1295)); *see also, e.g.*, *In re Rite Aid Corp. Secs. Litig.*, 396 F. 3d 294, 307 (3rd Cir.

17   2005).

18        The percentage-of-the-fund method is favored in common fund cases for two

19   reasons. First, it "more closely aligns the interests of the counsel and the class, i.e.,

20   class counsel directly benefit from increasing the size of the class fund and working

21   in the most efficient manner." *Lopez*, 2011 WL 10483569, at *3; *In re Oracle*

22   *Securities Litig.*, 852 F. Supp. 1437, 1454 (N.D. Cal. 1994). Second, it encourages

23   early settlement of meritorious cases and "ensur[es] that competent counsel continue

24   to be willing to undertake risky, complex, and novel litigation." *Manual for*

25   *Complex Litigation*, § 14.121. In comparison, the lodestar method is usually better

26   suited for non-common fund cases, such as "employment, civil rights and other

27   injunctive relief class actions." *Hanlon v. Chrysler Corp.*, 150 F. 3d 1011, 1029

28   (9th Cir. 1998). In such cases, "there is no way to gauge the net value of the

1   settlement or any percentage thereof." *Id.*; *see also In re Bluetooth Headset Prods.*

2   *Liab. Litig.*, 654 F. 3d 935, 941-42 (9th Cir. 2011).  When the percentage-of-the-

3   fund method is used, courts can—but are not required to—use the lodestar method

4   as a "cross-check." *Vizcaino*, 290 F. 3d at 1050 & n.5.  (See Part III.D, infra, for

5   discussion of the lodestar cross-check).

6          The percentage-of-the-fund method is the most appropriate way to determine

7   PSW's fees here.  Indeed, the percentage method is especially appropriate in cases

8   such as this, in which "the class benefit can be monetized with a reasonable degree

9   of certainty."  *See Johansson-Dohrmann v. Cbr Sys., Inc.*, No. 12-cv-1115-MMA,

10  2013 WL 3864341, at *8 (S.D. Cal. Jul. 24, 2013) (citing *Consumer Privacy Cases*,

11  175 Cal. App. 4th at 556-57).  Pursuant to the Settlement, Iovate agreed to create a

12  Fund of $2,500,000 available to Class Members.  The Settlement allows for Class

13  Members to make claims with or without proof of purchase.  In addition to creating

14  a Fund, Iovate agreed to correct the labeling of its Protein Products to accurately

15  reflect the amount of protein contained therein.  Thus, the requested fees here are

16  reasonable and appropriate.

17         **C.    Plaintiff Seeks the Ninth Circuit's Benchmark of 25% of the Fund**

18         Courts in the Ninth Circuit use a "25% benchmark rate" as the "starting point

19  for analysis" of the percentage-of-the-fund award.  *See Vizcaino*, 290 F. 3d at 1048;

20  *see also Staton v. Boeing Co.*, 327 F. 3d 938, 968 (9th Cir. 2003); *Hanlon*, 150 F. 3d

21  at 1029; *Johansson-Dohrmann*, 2013 WL 3864341, at *9 (citing *In re Consumer*

22  *Privacy Cases*, 175 Cal. App. 4th at 556 n.13) ("Under the percentage method,

23  California has recognized that most fee awards based on either a lodestar or

24  percentage calculation are 33 percent and has endorsed the federal benchmark of 25

25  percent.").  Courts are further permitted to adjust the benchmark figure up or down

26  in order "to fit the individual circumstances" of each case.  *Six (6) Mexican*

27  *Workers*, 904 F. 2d at 1311; *Vizcaino*, 290 F. 3d at 1048.

28

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

867395.2

6

The Ninth Circuit has identified certain factors to be considered in determining whether to award the benchmark or some other amount.  These include: (1) the degree of success counsel achieved for the class; (2) the risks involved in the litigation, including the skill required and the quality of the work performed to overcome those risks; (3) the achievement of "benefits beyond the cash settlement fund"; (4) the contingent nature of the fee and the burdens borne by class counsel in taking on the litigation; and (5) the range of awards made in similar cases.  *Vizcaino*, 290 F. 3d at 1048-50.  As discussed below, each of the above five factors supports the reasonableness of Plaintiff's request for the benchmark amount.

### 1. PSW Obtained an Extraordinary Settlement for the Class

Courts place great weight on the degree of success counsel achieved for the class.  *See Vizcaino*, 290 F. 3d at 1048 (considering counsel's "exceptional results"); *Six (6) Mexican Workers*, 904 F. 2d at 1311 (noting plaintiffs' "substantial success").  In general, courts equate "success" with "the size of the fund created, because 'a common fund is itself the measure of success . . . .'"  *Manual for Complex Litigation*, §14.121; *see also Garner v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 1687829, at *1 (N.D. Cal. Apr. 22, 2010) (awarding a 30% fee, in part, because the $15 million fund represented "outstanding monetary results for the Class members").  Here, PSW obtained a Fund of $2.5 million.  Warshaw Decl., ¶ 10.  The Settlement allows Class Members to file a claim and receive a *one hundred percent* refund up to $300 if they submit receipts or proof of purchase, or up to $50 without any receipts or proof of purchase.  *Id*.  This Settlement more than adequately remedies the harm alleged in the complaint, and there could be no better settlement for this case.

The Fund will benefit thousands of Class Members, all of whom will receive cash payments if they submit valid claims.  Warshaw Decl., ¶ 10.  Even after subtracting PSW's proposed fee award and all other administrative and legal costs,

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

the net value of the Fund is approximately $1.6 million, which will result in a substantial payment to each participating Class Member.  The Settlement is a great result for the Class in light of the challenges, risks, and potential expenses Plaintiff faced in this case.

### 2. The Case Involved Complex Legal Issues and Significant Risks, Requiring Tremendous Skill and Superior Work to Overcome

The next factor justifying an award of the benchmark amount is the complexity of the issues and degree of risk faced by PSW, as well as the skill required and work performed in order to successfully overcome those hurdles.  *See Vizcaino*, 290 F. 3d at 1048; *Six (6) Mexican Workers*, 904 F. 2d at 1311; *Craft*, 624 F. Supp. 2d at 1117.

This case involved numerous complex issues of fact and law, and presented significant risks for PSW.  This class action lawsuit challenged the amounts of protein represented on the labeling of Iovate's Protein Products.  Iovate filed a motion to dismiss arguing Plaintiff's complaint should be dismissed because the claims were preempted under the Nutrition Labeling and Education Act of 1990, Pub. L. No. 101-535, 104 Stat. 2353 (1990), 21 U.S.C. §§ 343(q), (r), 343-1(a)(4), (5).  While the parties met and conferred to narrow the issues in the motion to dismiss, there was still the issue of whether or not federal preemption would bar Plaintiff's claims.  Had this case proceeded, there would be many costs associated with litigating the case, including paying experts and travel to depositions since Iovate's headquarters is located over 2,500 miles away.  In addition, more in-depth testing would need to be conducted on the Protein Products, requiring PSW to purchase multiple samples in each variety and have them analyzed by an expert.

In order to prevail on his claims, Plaintiff needed to demonstrate that the advertising of Iovate's Protein Products was likely to mislead a reasonable consumer and that Iovate's practices did not comply with state and federal law.  *See*

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

1  *Williams v. Gerber Prods. Co.*, 552 F. 3d 934, 938 (9th Cir. 2008).  Plaintiff's

2  claims were based on the allegation that Iovate's Protein Products contained

3  substantially less protein that what was represented on the labeling.  This was due to

4  Iovate's addition of creatine monohydrate, and other amino acids which "spiked"

5  the amount of protein in the products under certain testing methods.  While Plaintiff

6  remains confident in his claims, there still existed the uncertainty of litigation,

7  including the risk of preemption.  Due to the cooperation of the parties, and the

8  assistance of Judge Tevrizian (Ret.), an exceptional settlement was reached.

9  **3.  The Non-Monetary Benefits of the Settlement Are
         Substantial**
10

11  In addition to the value of the fund itself, courts also consider the "non-

12  monetary benefits conferred by the litigation."  *See Vizcaino*, 290 F. 3d at 1049.

13  Where class counsel achieve significant benefits beyond the dollar value of the

14  common fund, such benefits are "a relevant circumstance to consider in determining

15  what percentage of the fund is reasonable as fees."  *See Staton*, 327 F. 3d at 945-46;

16  *see also Garner*, 2010 WL 1687829, at *2; *Kanawi v. Bechtel Corp.*, No. C 06-

17  05566 CRB, 2011 WL 782244, 2 (N.D. Cal. Mar. 1, 2011).  Non-monetary benefits

18  can justify an upward departure from the benchmark.  *See, e.g., Garner*, 2010 WL

19  1687829, at *2; *Kanawi*, 2011 WL 782244, at *2.

20  Here, the non-monetary relief is not only substantial, but it remedies the exact

21  harm Plaintiff alleged in his complaint.  The Settlement here requires Iovate to

22  provide injunctive relief to the Class by modifying the testing, labeling, packaging,

23  and advertising for its Protein Products to insure that the nitrogen content attributed

24  to amino acids, creatine, and other non-protein substances therein are excluded in

25  the protein calculation.  Settlement Agreement, § 4.1.1.  This relief is substantial

26  because it directly addresses and remedies the allegations in the FAC.

27  The significance of the results achieved and the benefits obtained on behalf of the

28  Class further support granting Plaintiff's requested attorneys' fees.

4.    **PSW Took on a Heavy Contingent Risk, Advanced All Litigation Costs, and Worked on this Case Without Any Guarantee of Success**

The fourth factor the Court should consider is the contingent nature of the case and the burdens borne by PSW in undertaking the litigation. *Vizcaino*, 290 F. 3d at 1050 (citing *Torrisi v. Tucson Elec. Power Co.*, 8 F. 3d 1370, 1377 (9th Cir. 1993)); *Six (6) Mexican Workers*, 904 F. 2d at 1311. Relevant to this inquiry is the contingency risk, the cost and length of the litigation, and whether counsel were forced to forego other significant legal work. *Id.*; *see also Craft*, 624 F. Supp. 2d at 1120. This is because courts recognize that "the public interest is served by rewarding attorneys who assume representation on a contingent basis with an enhanced fee to compensate them for the risk that they might be paid nothing at all for their work." *Garner*, 2010 WL 1687829, at *2 (citing *Vizcaino*, 290 F. 3d at 1050; *WPPSS*, 19 F. 3d at 1299). "Such a practice encourages the legal profession to assume such a risk and promotes competent representation for plaintiffs who could not otherwise hire an attorney." *Kanawi*, 2011 WL 782244, at *2; *see WPPSS*, 19 F. 3d at 1299-1300.

As the accompanying declaration of Daniel L. Warshaw describes, PSW has been working diligently in prosecuting this case from the outset. *See generally* Warshaw Decl. There was considerable risk in undertaking this case. At no time during the litigation were there any guarantees that Plaintiff would obtain a successful outcome. Further, Iovate's defenses, including the FDCA, presented a real risk that Plaintiff's claims would be preempted. PSW declined additional engagements because of its commitment to the instant case. Throughout the litigation, PSW advanced all costs, including discovery costs and the cost of going to mediation with Judge Tevrizian (Ret.). In the end, costs totaled $8,013.95 which have not been reimbursed, and all the while there was no promise of repayment. *Id.*, ¶ 20.

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

**5.     The Requested Fee is Well in Line with the Range of Percentage Fee Awards Approved by the Ninth Circuit and Its District Courts**

Finally, courts consider "the range of fee awards out of common funds of comparable size." *Vizcaino*, 290 F. 3d at 1049-50. "In light of the many cases in this circuit that have granted fee awards of 30% or more, the requested fee [of 30%] is well within the usual range of percentages awarded in similar cases." *Vedachalam v. Tata Consultancy Servs., Ltd.*, No. C 06-0963 CW, 2013 WL 3941319, at *2 (N.D. Cal. July 18, 2013). In cases of comparable size, fee awards of 30% or higher are common. *See* Thomas E. Willging, et al., *Empirical Study of Class Actions in Four Federal District Courts: Final Report to the Advisory Committee on Civil Rules*, Fig. 68 (Fed. Judicial Center 1996)(examining 23 cases from the Northern District of California and finding a mean fee award of 27% and a median fee award of 29%). The Ninth Circuit has also frequently affirmed awards of 25% or more in common fund cases. *See, e.g.*, *In re Pacific Enterprises Sec. Litig.*, 47 F. 3d 373, 379 (9th Cir. 1995) (33.3%); *Palmer v. Nigaglioni*, 508 Fed. Appx. 658, 658 (9th Cir. 2013) (28%); *Vizcaino*, 290 F. 3d at 1048-50 (28%); *Glass v. UBS Fin. Servs., Inc.*, 331 Fed. Appx. 452, 457 (9th Cir. 2009) (25%); *Pincay Investments Co. v. Covad Commc'ns Grp.*, 90 Fed. Appx. 510, 511-12 (9th Cir. 2004) (25%); *Torrisi v. Tucson Elec. Power Co.*, 8 F. 3d 1370 (9th Cir. 1993) (25%).

Plaintiff's proposed fee of 25% of the common fund is well within the range of other fee awards granted in comparable cases. Plaintiff's request for the benchmark percentage should be approved because of the outstanding settlement obtained by PSW. In addition, PSW faced and overcame significant legal and factual risks and issues in the litigation. Lastly, PSW bore the risk of pursuing the litigation on a pure contingency basis with no promise of repayment of litigation costs. All of these reasons show that a 25% fee is reasonable in this case.

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

867395.2

11

### D.    A Lodestar Cross-Check Confirms that Plaintiff's Requested 25% Fee Is Reasonable

The lodestar method "measures the lawyers' investment of time in the litigation" and "provides a check on the reasonableness of the percentage award." *See Vizcaino*, 290 F. 3d at 1050.  Although this cross-check is not required, *see Bluetooth*, 654 F. 3d at 942 (stating that in common fund cases, the percentage method may be used "*in lieu of* the often more time-consuming task of calculating the lodestar") (emphasis added) and *Craft*, 624 F. Supp. 2d at 1122 ("[a] lodestar cross-check is not required in this circuit"), it confirms the reasonableness of the requested 25% fee.

Under the lodestar method, PSW's lodestar serves as the "touchstone" for the fee award.  *See Vo v. Las Virgines Mun. Water Dist*., 79 Cal. App. 4th 440, 445-46 (2000).  The court may then adjust the lodestar amount based on a number of factors, including: "(1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, [and] (4) the contingent nature of the fee award." *Ketchum v. Moses,* 24 Cal. 4th 1122, 1132 (2001).  Other relevant factors include "the time limitations imposed by the litigation, the amount at stake, and the result obtained by counsel."  *City of Oakland v. Oakland Raiders*, 203 Cal. App. 3d 78, 83 (1988); *Bluetooth*, 654 F. 3d at 942.

### 1.    PSW's Lodestar Is Reasonable and Compensable

"Under the lodestar method, a party who qualifies for a fee should recover for all hours reasonably spent unless special circumstances would render the award unjust."  *Vo*, 79 Cal. App. 4th at 446; *see also Weeks v. Baker & McKenzie*, 63 Cal. App. 4th 1128, 1175 (1998) ("[A]n attorney who takes on [a complex] case can anticipate receiving full compensation for every hour spent litigating a claim against even the most polemic opponent."); *Ketchum,* 24 Cal. 4th at 1132.  Compensable activities under the lodestar method include both pre-litigation activities (*e.g.*,

12

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

interviewing the client, investigating the facts, researching the law, and preparing

the initial pleading) and litigation activities (*e.g.*, conducting discovery, conferring

with clients, drafting pleadings, making court appearances, travel time, and

settlement negotiations).  *Webb v. Bd. of Edu.*, 471 U.S. 234, 243 (1985); *Stokus v.*

*Marsh*, 217 Cal. App. 3d 647, 655-56 (1990).

The first step employed in awarding fees under the lodestar method is to

calculate the lodestar amount, which is the number of hours reasonably performed at

a reasonable hourly rate.  *Vo*, 79 Cal. App. 4th at 440.  PSW's lodestar can be

calculated in one of two ways: "(1) by applying the attorneys' current rates to all

hours billed during the course of the litigation; or (2) by using the attorneys'

historical rates and adding a prime rate enhancement."  *WPPSS*, 19 F. 3d at 1305.  It

is well established that in moving for fees, counsel is "not required to record in great

detail how each minute of his time was expended."  *Hensley v. Eckerhart*, 461 U.S.

424, 437 n.12 (1983).  Instead, counsel need only "identify the general subject

matter of his time expenditures."  *Id.*; *Fischer v. SJB-P.D. Inc.*, 214 F. 3d 1115,

1121 (9th Cir. 2000) ("a summary of the time spent on a broad category of tasks

such as pleadings and pretrial motions" met "basic requirement" of documentation).

The court can accept declarations of counsel setting forth the hours worked and

tasks performed.  *In re Sutter Health Uninsured Pricing Cases*, 171 Cal. App. 4th

495, 511-12 (2009) ("We see no reason why [the court] could not accept the

declarations of counsel attesting to the hours worked, particularly as he was in the

best position to verify those claims by reference to the various proceedings in the

case."); *Wershba v. Apple Computer, Inc.,* 91 Cal. App. 4th 224, 254-55 (2001)

(permitting fee awards in the absence of detailed time sheets).

As of January 22, 2016, PSW attorneys have spent a total of 825.90 hours

working on this case and have incurred a lodestar of $450,677.50 based on their

historical hourly rates.  *See* Warshaw Decl., ¶ 15.  PSW will spend additional time

conducting confirmatory discovery; drafting Plaintiff's Motion for Final Approval

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

1  of the Settlement; responding to Class Member objections (if any); continuing to

2  supervise the claims process; and preparing for and attending the Fairness Hearing

3  on April 4, 2016.  The declaration of Daniel L. Warshaw includes a breakdown

4  summary of the work completed at each stage of the litigation, including: (1)

5  research and investigation; (2) litigation activities such as drafting Plaintiff's

6  complaints, motion to appoint lead counsel, and opposition to Defendant's motion to

7  dismiss; (3) discovery related activities such as preparing written discovery and

8  taking the deposition of Defendant's Rule 30(b)(6) witness; (4) settlement related

9  activities, including preparing for and attending the mediation, reviewing records to

10 confirm the fairness of the Settlement, and finalizing the terms of the Settlement

11 Agreement; and (5) obtaining Court approval of the Settlement Agreement.  *See*

12 Warshaw Decl., ¶¶ 15, 16.

13       PSW's work has directly benefitted the class, and the lodestar amount is

14 reasonable and compensable.

### 2.  PSW's Hourly Rates Are Reasonable and Have Been Approved by Other Courts

16

17       The test for the reasonableness of an attorney's hourly rate is based on "the

18 rate prevailing in the community for similar work performed by attorneys of

19 comparable skill, experience, and reputation."  *See Chalmers v. City of Los Angeles*,

20 796 F. 2d 1205, 1210-11 (9th Cir. 1986); *see also Children's Hosp. & Med. Ctr. v.*

21 *Bunt*, 97 Cal. App. 4th 740, 783 (2002) (approving hourly rates that were "within

22 the range of reasonable rates charged by and judicially awarded comparable

23 attorneys for comparable work").  In performing this analysis, courts look to the

24 experience and reputation of class counsel, the complexity of the issues involved,

25 the geographic market in which the case is litigated, and other factors affecting the

26 litigation.  *Barjon v. Dalton,* 132 F. 3d 496, 500-02 (9th Cir. 1997) (determining

27 counsel's hourly rate based on prevailing rates charged in Sacramento); *Oakland*

28 *Raiders*, 203 Cal. App. 3d at 82 (affirming a trial court's approval of an hourly rate

867395.2

14

NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, LITIGATION COSTS, AND INCENTIVE AWARD; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1   that falls in line with the rates charged in the Bay Area).

2       While several attorneys at PSW worked on this matter, the work was

3   allocated in the most cost-effective manner.  All major briefing was done by

4   associates, with supervision performed by partner Daniel Warshaw.  PSW billed this

5   case at its usual and customary hourly billing rates, which have been approved by

6   other courts presiding over similar complex class action lawsuits, including cases

7   pending in the Central District of California.  *See* Warshaw Decl., ¶ 18.

### 3.   A Lodestar Multiplier Is Warranted Based on PSW's Handling of this Case and the Results Obtained.

10      Once calculated, the lodestar can be adjusted upward using a "multiplier"

11  based on several factors, including: the novelty and difficulty of the litigation;

12  PSW's skill in handling it; the burdens imposed by taking on the case; the

13  contingent nature of the fee award; and the quality of the results achieved.  *See*

14  *Ketchum*, 24 Cal. 4th at 1132; *Oakland Raiders*, 203 Cal. App. 3d at 83; *Bluetooth*,

15  654 F. 3d at 942.  There is no rigid formula and each factor should be considered

16  only where appropriate.  *See Serrano*, 20 Cal. 3d at 49; *The People ex rel. Dep't. of*

17  *Transp. v. Yuki*, 31 Cal. App. 4th 1754, 1771 (1995).  Multipliers in the range of

18  three to four are commonly approved in class action litigation.  *See, e.g., Vizcaino*,

19  290 F. 3d at 1050-54 (upholding a multiplier of 3.65 and noting multipliers as high

20  as 19.6); *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal.

21  1995) ("Multipliers in the 3-4 range are common in lodestar awards for lengthy and

22  complex class action litigation."); *Wershba*, 91 Cal. App. 4th at 255 ("Multipliers

23  can range from 2 to 4 or even higher."); *Been v. O.K. Industries, Inc.*, 2011 WL

24  4478766, at *11 (E.D. Okla. 2011) (citing a study "reporting average multiplier of

25  3.89 in survey of 1,120 class action cases").  In fact, some courts have approved

26  multipliers vastly exceeding that range.  *See*, *e.g.*, *Craft*, 624 F. Supp. 2d at 1123

27  (awarding 5.2 multiplier); *In re Rite Aid Corp. Secs. Litig.*, 362 F. Supp. 2d 587

28  (E.D. Pa. 2005) (awarding 6.96 multiplier); *Davis v. J.P. Morgan Chase & Co.*, 827

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

867395.2

15

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

1   F. Supp. 2d 172, 185 (W.D.N.Y. 2011) (awarding 5.3 multiplier); *Maley v. Del*

2   *Global Technologies Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (awarding

3   4.65 multiplier).

4   In the instant case, consideration of the above factors supports the modest

5   lodestar multiplier sought by PSW. The requested 25% of the common fund fee

6   represents a 1.39 multiplier based on PSW's historical hourly rates. For the

7   aforementioned reasons, such a multiplier is warranted in light of the complex legal

8   and factual issues involved in this litigation; the work performed and skill required

9   by PSW in handling those complex issues; the significant risks, costs, and

10   uncertainties borne by PSW in taking this case on contingency; and most

11   importantly, the significant results obtained by PSW in the form of a $2.5 million

12   common fund and the injunctive relief to correct the labeling on Iovate's Protein

13   Products.

14   **E.   Plaintiff Should Be Reimbursed for Litigation Costs**

15   In addition to attorneys' fees incurred, attorneys in a class action may be

16   reimbursed for costs incurred "in the ordinary course of prosecuting [a] case." *See*

17   *X-Ray Film Antitrust Litig.*, No. 960886, 1998 WL 1031494, at *11 (Cal. Sup. Ct.

18   Oct. 22, 1998) (awarding class counsel $29,051.40 in costs and expenses); *In re*

19   *Businessland Sec. Litig.*, No. 09-CV-20476-RFP, 1991 WL 427887, at *3 (N.D. Cal.

20   June 14, 1991) (awarding class counsel $90,574.78 in costs and expenses in addition

21   to attorneys' fees). Reasonable reimbursable litigation costs include, but are not

22   limited to, the costs of document production, experts and consultants, depositions,

23   notice, and travel expenses. *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 391-92

24   (1970) ("To allow the others to obtain full benefit from the plaintiff's efforts without

25   contributing equally to the litigation expenses would be to enrich the others unjustly

26   at the plaintiff's expense."). Here, PSW is seeking reimbursement for $8,013.95 in

27   litigation costs, which accounts for filing fees, photocopying, travel related

28

expenses, deposition related expenses, purchasing samples of the Protein Products, and mediation fees. *See* Warshaw Decl., ¶ 20.

**F.    The Court Should Award an Incentive Award to the Class Representative**

District courts have the discretion to award incentive payments to named plaintiffs in class action litigation. *Staton*, 327 F. 3d at 977 (9th Cir. 2003). "Incentive awards are fairly typical in class action cases . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. West Publ'g Corp.*, 563 F. 3d 948, 958-59 (9th Cir. 2009) (emphasis omitted). Here, Plaintiff requests an incentive award of $5,000. This requested award comports with precedent and is justified by the time and effort Plaintiff has dedicated to this case, which included, *inter alia*, reviewing the factual allegations in pleadings for accuracy, having his deposition taken, and participating in settlement conferences. Declaration of James Eashoo, ¶¶ 3, 4.

**IV.    CONCLUSION**

Based on the foregoing, Plaintiff respectfully requests an award of attorneys' fees, costs, and incentive award in the amounts set forth above.

DATED: January 25, 2016

**PEARSON, SIMON & WARSHAW, LLP**
DANIEL L. WARSHAW
BOBBY POUYA
MATTHEW A. PEARSON
ALEXANDER R. SAFYAN


By:    */s/ Daniel L. Warshaw*
DANIEL L. WARSHAW
Attorneys for Plaintiff James Eashoo, individually and on behalf of all others similarly situated

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

867395.2

17

NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, LITIGATION COSTS, AND INCENTIVE AWARD; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF