LINK:

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 15-01726-BRO (PJWx) | Date | April 5, 2016 |
|---|---|---|---|
| Title | JAMES EASHOO V. IOVATE HEALTH SCIENCES U.S.A., INC. | | |

| Present: The Honorable | BEVERLY REID O'CONNELL, United States District Judge | |
|---|---|---|
| Renee A. Fisher | Not Present | N/A |
| Deputy Clerk | Court Reporter | Tape No. |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: | |
| Not Present | Not Present | |

**Proceedings:** (IN CHAMBERS)

**ORDER GRANTING PLAINTIFF'S MOTION FOR
FINAL APPROVAL OF CLASS ACTION SETTLEMENT
AND MOTION FOR ATTORNEYS' FEES [51] [53]**

## I. INTRODUCTION

Pending before the Court is a Motion for Final Approval of Class Action Settlement filed by Plaintiff James Eashoo ("Plaintiff") on behalf of himself and a class of others similarly situated ("Class Members"), as well as Plaintiff's Motion for Attorneys' Fees. (Dkt. Nos. 51, 53.) Defendant Iovate Health Sciences U.S.A., Inc. ("Defendant") has filed a Notice of Non-Opposition to Plaintiff's Motion for Final Approval, (Dkt. No. 54), and it has not opposed Plaintiff's Motion for Attorneys' Fees. After considering the papers filed in connection with the instant motions, the arguments advanced at the final fairness hearing held on April 4, 2016, and the entirety of the record, the Court **GRANTS** Plaintiff's Motions.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Defendant is a "global manufacturer of health and wellness products," including "protein supplements, weight management products, and other nutrition products." (FAC ¶ 1.) Plaintiff and the Class Members are consumers of Defendant's protein supplement products. (FAC ¶ 6.) According to Plaintiff, Defendant artificially inflated the protein count of its protein supplements by adding non-protein compounds to them. (Mot. for Final Approval of Class Action Settlement ("Class Action Mot.") at 1.) Defendant continues to deny Plaintiff's claims. (Decl. of Daniel L. Warshaw ("Warshaw Decl.") ¶ 4, Ex. 2 at 7.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 15-01726-BRO (PJWx)** | Date | April 5, 2016 |
|---|---|---|---|
| Title | **JAMES EASHOO V. IOVATE HEALTH SCIENCES U.S.A., INC.** | | |

  Plaintiff initiated the instant action on March 10, 2015, filing his Original Complaint in this Court. (Dkt. No. 1.) Plaintiff subsequently filed a First Amended Complaint ("FAC") against Defendant on April 10, 2015, alleging the following causes of action: (1) violation of the Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.*, (FAC ¶¶ 53–61); (2) breach of express warranty, (FAC ¶¶ 62–69); (3) negligent misrepresentation, (FAC ¶¶ 70–77); (4) violation of California's false advertising law, Cal. Civ. Code. § 17500 *et seq.*, (FAC ¶¶ 78–84); (5) violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*, (FAC ¶¶ 85–96); and, (6) violation of California's unfair competition law, Cal. Bus. & Prof. Code § 17200 *et seq.*, (FAC ¶¶ 97–108).

  On June 19, 2015, Defendant filed a Motion to Dismiss, arguing that all of Plaintiff's claims are preempted under the Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 321(ff). (*See* Dkt. No. 38.) The hearing of the motion was scheduled for August 17, 2015. (*See id.*) However, on August 12, 2015, the parties filed a Notice of Settlement, (Dkt. No. 41), thereby mooting the hearing.

  On October 9, 2015, Plaintiff filed a Motion for Preliminary Approval of Class Action Settlement. (Dkt. No. 44.) Defendant filed a Notice of Non-Opposition to the motion on October 19, 2015. (Dkt. No. 45.) The Court held a hearing of the motion on November 9, 2016, (Dkt. No. 46), and granted the motion the same day, (Dkt. No. 47). Pursuant to the Preliminary Approval of Class Action Settlement Order, Plaintiff filed the instant Motion for Attorneys' Fees on January 25, 2016, (Dkt. No. 51), as well as the instant Motion for Final Approval of Class Action Settlement on February 22, 2016, (Dkt. No. 53). On March 14, 2016, Defendant filed a Notice of Non-Opposition to Plaintiff's Motion for Final Approval, (Dkt. No. 54), and Defendant has not filed an opposition to Plaintiff's Motion for Attorneys' Fees.

  The Court held a final fairness hearing on Monday, April 4, 2016. Counsel for Plaintiff and Defendant were present at the hearing. No Class Members appeared to object to or oppose the settlement.

| Case No. | CV 15-01726-BRO (PJWx) | Date | April 5, 2016 |
|---|---|---|---|
| Title | JAMES EASHOO V. IOVATE HEALTH SCIENCES U.S.A., INC. | | |

### A. Negotiations of the Settlement Agreement

On May 14, 2015, Plaintiff and Defendant attended a full-day mediation, presided over by a retired judge, Dickran M. Tevrizian. (Class Action Mot. at 3; Warshaw Decl. ¶ 7.) Although the parties were unable to reach an agreement during the mediation, they continued to engage in settlement discussions with the assistance of Judge Tevrizian. (Class Action Mot. at 3; Warshaw Decl. ¶ 8.) After numerous teleconferences over the course of three months, and with the continued assistance of Judge Tevrizian, the parties reached an agreement ("Settlement Agreement"). (*Id.*)

### B. Settlement Agreement

The Settlement Agreement defines the Class Members as "all persons in the United States of America who purchased one or more of Defendant's Protein Products at any time during the [c]lass [p]eriod." (Warshaw Decl. ¶ 4, Ex. 2 at 7.) The class period is March 10, 2011 through the present ("Class Period"). (*Id.* at 3.) Under the terms of the Settlement Agreement, Plaintiff and the Class Members will obtain both injunctive and monetary relief from Defendant. (Class Action Mot. at 3.) As to the injunctive relief, Defendant agrees to modify the testing, labeling, packaging, and advertising for its protein products to ensure the nitrogen content attributed to amino acids, creatine, and other non-protein substances are not included in its protein calculations. (Class Action Mot. at 4; Warshaw Decl. ¶ 4, Ex. 2 at 8.) With respect to the monetary relief, Defendant agrees to create a $2.5 million non-reversionary common fund to compensate Class Members who submitted a timely and valid claim form. (Class Action Mot. at 1, 3; Warshaw Decl. ¶ 4, Ex. 2 at 10.)

The Settlement Agreement further provides that Class Members may elect to participate and obtain refunds from the common fund for eligible purchases of Defendant's products in one of three ways: (1) filing a claim and using receipts to obtain a 100% refund of the amount indicated on the receipt for each protein product, up to $300 per household; (2) filing a claim by submitting proof of purchase (e.g., protein product labels, stock keeping unit code, etc.) to recover the suggested retail price of each purchased product, up to $300 per household; or, (3) for Class Members with no receipt or other proof of purchase, they may affirm under penalty of perjury that they purchased one or more of Defendant's protein products during the Class Period and recover $10 per

LINK:

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 15-01726-BRO (PJWx) | Date | April 5, 2016 |
|---|---|---|---|
| Title | JAMES EASHOO V. IOVATE HEALTH SCIENCES U.S.A., INC. | | |

product purchased, up to $50 per household. (Class Action Mot. at 3–4; Warshaw Decl. ¶ 4, Ex. 2 at 10.) The Settlement Agreement also states that any amounts remaining from the common fund after all claims have been paid will be distributed to Class Members who executed valid, timely claims. (Class Action Mot. at 4; Warshaw Decl. ¶ 4, Ex. 2 at 10–11.) First, any surplus will be distributed to Class Members who submitted receipts or proofs of purchase in excess of $300, up to the full amount of their qualifying purchases. (*Id.*) Any remaining surplus will be distributed pro-rata to Class Members who filed a claim under penalty of perjury. (*Id.*)

In exchange for the monetary and injunctive relief, Plaintiff and the Class Members agree to fully, finally, and forever release, relinquish, and discharge Defendant from all claims. (Class Action Mot. at 4–5; Warshaw Decl. ¶ 4, Ex. 2 at 14.) More specifically, Plaintiff and the Class Members have agreed to release Defendant of the claims alleging that Defendant misrepresented and artificially inflated the true protein content of its protein products.

### C. Notice to Class Members and Class Response

Pursuant to the Court's Order preliminarily approving the settlement agreement, (Dkt. No. 47), Rust Consulting, Inc. ("Rust") served as the claims administrator in this matter. (Decl. of Cory LeFebvre ("LeFebvre Decl.") ¶ 3.) To provide notice to potential Class Members, Rust used internet and newspaper advertising, targeting consumers interested in health, fitness, and exercising. (Class Action Mot. at 5.) Specifically, Rust provided class notice through (1) the dissemination of internet banner[1] and newspaper advertisements,[2] (2) the creation and maintenance of a settlement website, and (3) the creation and maintenance of a toll-free number for the Class Members to call to obtain additional information. (LeFebvre Decl. ¶ 3.)

---

[1] Rust published internet banner advertisements on popular health and fitness websites, including Men's Health, Men's Fitness, Muscle & Fitness, Muscle & Fitness Hers, and Flex. (LeFebvre Decl. ¶ 4.) Rust also published banner notices on Facebook to individuals who have expressed an interest in health and fitness. (*Id.*)

[2] The newspaper advertisements included four separate publications of notice in the Los Angeles and San Francisco editions of USA Today, as well as PR Newswire's US1 and National Hispanic news lines. (LeFebvre Decl. ¶ 4.)

Case 2:15-cv-01726-BRO-PJW Document 57 Filed 04/05/16 Page 5 of 19 Page ID #:798

LINK:

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 15-01726-BRO (PJWx)** | Date | April 5, 2016 |
|---|---|---|---|
| Title | **JAMES EASHOO V. IOVATE HEALTH SCIENCES U.S.A., INC.** | | |

As a result of Rust's notice, Rust received 24,288 timely and complete claim forms, which Rust has deemed "approved to receive payments based on the information provided with the claim." (Decl. of Rebecca Blake ("Blake Decl.") ¶ 3.) "Of the 24,288 valid claims, 857 are Option 1: Proof with Receipt, 300 are Option 2: Proof of Purchase, [and] 23,131 are Option 3: No Proof." (*Id.*) The aggregate total of the claimed amount is $1,589,416 in refunds. (Blake Decl. ¶ 4.) Finally, Rust has not received any requests for exclusions or objections to the Settlement Agreement. (LeFebvre Decl. ¶ 11.)

## III. LEGAL STANDARD

There is a strong judicial policy favoring settlement agreements, "particularly where complex class action litigation is concerned." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). Nevertheless, when reviewing a proposed class action settlement, district courts "have the responsibility of ensuring fairness to all members of the class." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). A district court may not approve a class settlement unless the court determines that the "proposed settlement is fundamentally fair, adequate, and reasonable." *Id.* (internal quotation marks omitted).

### A. Final Approval of a Class Action Settlement Under Rule 23(e)

Under Rule 23(e), the "claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). District courts must follow a two-step process when deciding whether to approve a proposed class action settlement. *See McKenzie v. Fed. Express Corp.*, No. CV 10-02420-GAF, 2012 WL 2930201, at *2 (C.D. Cal. July 2, 2012). "First, the court must determine whether the proposed settlement deserves preliminary approval." *Id.* (citing *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004)). Second, once the class members receive notice of the proposed settlement, the court must hold a fairness hearing and determine whether final approval is warranted. *Id.* (citing *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 525).

Under Rule 23(e), a district court may not finally approve a class settlement unless the court determines that the "proposed settlement is fundamentally fair, adequate, and reasonable." *Staton*, 327 F.3d at 959 (internal quotation marks omitted). The very

Case 2:15-cv-01726-BRO-PJW Document 57 Filed 04/05/16 Page 6 of 19 Page ID #:799

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 15-01726-BRO (PJWx) | Date | April 5, 2016 |
|---|---|---|---|
| Title | JAMES EASHOO V. IOVATE HEALTH SCIENCES U.S.A., INC. | | |

circumstances of settlement negotiations raise "incentives for the negotiators to pursue their own self-interest and that of certain class members." *Id.* at 960. Thus, a district court must review a proposed class action settlement not only for actual fraud, overreaching, or collusion, but also with an eye to whether the terms are fair, adequate, and reasonable to the class as a whole. *Id.*

In determining whether a proposed settlement meets the fundamental standard of fairness, adequacy, and reasonableness, a district court may consider the following factors: (1) "the strength of [the] plaintiffs' case"; (2) "the risk, expense, complexity, and likely duration of further litigation"; (3) "the risk of maintaining class action status throughout the trial"; (4) "the amount offered in settlement"; (5) "the extent of discovery completed, and the stage of the proceedings"; (6) "the experience and views of counsel"; (7) "the presence of a governmental participant"; and, (8) "the reaction of the class members to the proposed settlement." *Id.* at 959 (internal quotation marks omitted); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). "This list is not exclusive[,] and different factors may predominate in different factual contexts." *Torrisi v. Tuscon Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993).

A district court's role in evaluating a proposed settlement is "limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable[,] and adequate to all concerned." *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982). Accordingly, a district court should neither judge the merits of the claims in dispute, nor compare the proposed settlement "against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Id.* "Ultimately, the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations[,] and rough justice." *Id.* (internal quotation marks omitted).

### B. Attorneys' Fees Under Rule 23(h)

In any certified class action, a district court may award reasonable attorneys' fees and nontaxable costs as authorized by law or the parties' agreement. Fed. R. Civ. P. 23(h). Where a proposed class action settlement contains a fee provision, the provision is subject to the inquiry into whether the settlement is fair, adequate, and reasonable.

LINK:

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 15-01726-BRO (PJWx)** | Date | April 5, 2016 |
|---|---|---|---|
| Title | **JAMES EASHOO V. IOVATE HEALTH SCIENCES U.S.A., INC.** | | |

*Staton*, 327 F.3d at 963 (explaining that "[t]here is no exception in Rule 23(e) for fees provisions contained in proposed class action settlement agreements"). A district court must "carefully assess" the reasonableness of a fee provision. *Id.* The mere fact that the defendant agrees to pay the fees "does not detract from the need to carefully scrutinize the fee award." *Id.* at 964. This is because the allocation between the class award and the attorneys' fees "is of little or no interest to the defense." *Id.* (internal quotation marks omitted).

"[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). This doctrine is known as the "common fund" doctrine. As the Supreme Court explained:

> The [common fund] doctrine rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense. Jurisdiction over the fund involved in the litigation allows a court to prevent this inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit.

*Id.* (internal citations omitted). Thus, the common fund doctrine permits a district court to award attorneys' fees from the total monetary fund recovered by the class to ensure that each class member "contributes proportionately to the payment of attorneys' fees." *Staton*, 327 F.3d at 967.

The Supreme Court has set forth three criteria for obtaining an award of attorneys' fees from a common fund. First, the class of persons benefiting from the fund must be "easily identifiable." *Van Gemert*, 444 U.S. at 478–79. Second, the court must be able to accurately trace the benefits from the fund to the class beneficiaries. *Id.* at 479. Finally, the court must be able to shift the fee from the fund to those benefiting from it "with some exactitude." *Id.* Generally, these three criteria are satisfied "when each member of a certified class has an undisputed and mathematically ascertainable claim to part of a lump-sum judgment recovered on his behalf." *Id.*

LINK:

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 15-01726-BRO (PJWx)** | Date | April 5, 2016 |
|---|---|---|---|
| Title | **JAMES EASHOO V. IOVATE HEALTH SCIENCES U.S.A., INC.** | | |

In the Ninth Circuit, a district court presiding over a common fund case may award attorneys' fees based on one of two methods: the lodestar method or the percentage method. *Staton*, 327 F.3d at 967–68; *see also Hanlon*, 150 F.3d at 1029. If the court adopts the lodestar method, it may apply a risk multiplier to increase or decrease the fee award based on various factors, including the risk involved and the length of the proceedings. *Staton*, 327 F.3d at 968. If the court adopts the percentage method, "the court simply awards the attorneys a percentage of the fund sufficient to provide class counsel with a reasonable fee." *Hanlon*, 150 F.3d at 1029.

Although a court has discretion to apply either method, "use of the percentage method in common fund cases appears to be dominant." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *Paul, Johnson, Alston, & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989)). In applying the percentage method, the court "must show why [the chosen] percentage and the ultimate award are appropriate based on the facts of the case." *In re Omnivision Techs.*, 559 F. Supp. 2d at 1046 (explaining that the court may not "arbitrarily apply a percentage"). The "benchmark" for percentage-method fee awards in the Ninth Circuit is 25% of the common fund. *Hanlon*, 150 F.3d at 1029. Notwithstanding this benchmark, the percentage should be adjusted "when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." *Six (6) Mexican Workers*, 904 F.2d at 1311.

The ultimate goal under either the lodestar method or the percentage method is to "reasonably compensate counsel for their efforts in creating the common fund." *In re Omnivision Techs.*, 559 F. Supp. 2d at 1046 (citing *Paul, Johnson*, 886 F.2d at 271–72). In considering the overall fairness and reasonableness of a fee award, a court should consider the following factors: "(1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden on class counsel; and (5) awards made in similar cases." *Id.* (citing *Vizcaino*, 290 F.3d at 1048–50).

LINK:

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 15-01726-BRO (PJWx) | Date | April 5, 2016 |
|---|---|---|---|
| Title | JAMES EASHOO V. IOVATE HEALTH SCIENCES U.S.A., INC. | | |

## IV. DISCUSSION

### A. Plaintiff's Motion for Final Approval

A district court may only approve a class settlement after a hearing and upon a finding that the settlement is fair, adequate, and reasonable. Fed. R. Civ. P. 23(e)(2). For the reasons discussed below, the Court concludes that the settlement agreement here meets Rule 23(e)'s requirements and therefore **GRANTS** Plaintiff's Motion for Final Approval.

#### 1. The Strength of Plaintiff's Case

The first fairness factor considers the strength of Plaintiff's case. *See Staton*, 327 F.3d at 959. In assessing the strength of the case, a district court need not "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of [the] outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Officers for Justice*, 688 F.2d at 625.

In analyzing the strength of his case, Plaintiff identifies several risks inherent in further litigation. First, Plaintiff notes that Defendant has vigorously defended its protein testing methodology and has maintained that Plaintiff's claims are meritless. (Class Action Mot. at 8.) Also, before the parties filed the Settlement Agreement, Defendant filed a Motion to Dismiss, arguing that Plaintiff's claims are preempted under the FDCA.[3] (*Id.*) Plaintiff also explains that because he alleged a fraud claim, he would have to establish the difficult-to-prove elements of falsity and intent to deceive. (*Id.*) Finally, Plaintiff points out that the Court could have denied the Motion for Class Certification that he would have filed later in the litigation of this action. (Class Action Mot. at 8–9.)

In weighing this factor, courts look to whether the plaintiff properly accounted for his or her likelihood of success in deciding to accept a settlement. *See Franco v. Ruiz Food Prods.*, No. 1:10-CV-02354-SKO, 2012 WL 5941801, at *11 (E.D. Cal. Nov. 27,

---

[3] As discussed, the filing of the parties' Settlement Agreement mooted the Motion to Dismiss.

Case 2:15-cv-01726-BRO-PJW   Document 57   Filed 04/05/16   Page 10 of 19   Page ID #:803

LINK:

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 15-01726-BRO (PJWx) | Date | April 5, 2016 |
|---|---|---|---|
| Title | JAMES EASHOO V. IOVATE HEALTH SCIENCES U.S.A., INC. | | |

2012) ("Plaintiffs' likelihood of success appears to have been properly accounted for in the settlement amount."). Based on Plaintiff's analysis regarding the strength of his case, the Court concludes that Plaintiff has properly accounted for his likelihood of success. This factor therefore weighs in favor of approval.

### 2. The Risk, Expense, Complexity, and Likely Duration of Further Litigation

"In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 526 (internal quotation marks omitted). Here, Plaintiff explains that the possibility of Defendant prevailing on its preemption argument, as well as its anticipated opposition to class certification, demonstrate the risks associated with continued litigation. (Class Action Mot. at 9.) Further, Plaintiff notes that he would have incurred substantial litigation expenses to prosecute this case throughout class certification and trial. (*Id.*) For example, Plaintiff would have had to pay expert fees to retain expert witnesses who could establish that Defendant's protein products contained less protein than the amount advertised. (*Id.*) Proving that fact through expert testimony also indicates the factual complexity of this particular case, given that any retained expert would have to explain the scientific methodology utilized in testing Defendant's products. (*Id.*) Finally, this case was in its early stages, and there was no pre-trial schedule or trial date set. (*Id.*) Thus, as Plaintiff points out, he "would have had to litigate this case for a lengthy and unknown duration of time." (*Id.*) The Court agrees with Plaintiff's analysis. This factor accordingly weighs in favor of approval.

### 3. The Risk of Maintaining Class Action Status Throughout the Trial

Plaintiff argues that if the Court denies the proposed settlement, Defendant would "vigorously oppose[] class certification." (Class Action Mot. at 10.) Specifically, Plaintiff claims Defendant would "argue that common issues do not predominate because of variations in damages and the Class Members' reliance on the alleged protein content misrepresentations." (*Id.*) These facts favor approval of settlement, especially given that "there are doubts concerning the viability of the class." *In re Toys R Us-Del., Inc.–Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 452 (C.D. Cal.

Case 2:15-cv-01726-BRO-PJW Document 57 Filed 04/05/16 Page 11 of 19 Page ID #:804

LINK:

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 15-01726-BRO (PJWx) | Date | April 5, 2016 |
|---|---|---|---|
| Title | JAMES EASHOO V. IOVATE HEALTH SCIENCES U.S.A., INC. | | |

2014) ("Avoiding the risk of decertification, especially where there are doubts concerning the viability of the class, favors approval of the settlement.").

### 4. The Amount Offered in Settlement

When considering the overall fairness of a settlement, a court should view "the complete package taken as a whole, rather than the individual component parts." *Officers for Justice*, 688 F.2d at 628. A proposed settlement may be fair, adequate, and reasonable, even though greater recovery might be available to the class members at trial. *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998); *Officers for Justice*, 688 F.2d at 628 ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair."). Further, the Ninth Circuit has long deferred to the parties' private, consensual decisions. *See Hanlon*, 150 F.3d at 1027.

Here, Plaintiff has obtained monetary relief in the collective amount of $2.5 million; a substantial sum. Plaintiff has also obtained injunctive relief, which specifically remedies the alleged misrepresentations. This factor therefore weighs in favor of approval.

### 5. The Extent of Discovery Completed and the Stage of the Proceedings

The extent of discovery may be indicative of the parties' knowledge of the case and is therefore relevant to determining the overall fairness of a settlement. *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 527. Where the parties conducted extensive discovery, this factor favors final approval "because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case." *Id.* (internal quotation marks omitted). "A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." *Id.* at 528.

Plaintiff does not address this factor in his Motion. It is therefore unclear to what extent the parties have conducted discovery. However, Plaintiff does explain that the parties participated in one unsuccessful mediation. Plaintiff also indicates that the parties engaged in several teleconference settlement discussions over the course of three months

Case 2:15-cv-01726-BRO-PJW  Document 57  Filed 04/05/16  Page 12 of 19  Page ID #:805

LINK:

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 15-01726-BRO (PJWx) | Date | April 5, 2016 |
|---|---|---|---|
| Title | JAMES EASHOO V. IOVATE HEALTH SCIENCES U.S.A., INC. | | |

following that mediation.  It is reasonable to infer that to participate in the mediation and the subsequent teleconference settlement discussions, the parties conducted at least some discovery.  Thus, although it is unclear whether the parties engaged in *extensive* discovery, they likely conducted some discovery.  Accordingly, this factor weighs slightly in favor of approval.

### 6. The Experience and Views of Class Counsel

"Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).  Plaintiff's counsel, Pearson, Simon & Warshaw, LLP, has "extensive experience in class action litigation, [and] ha[s] negotiated numerous other class action settlements."  (Class Action Mot. at 11; Warshaw Decl. ¶ 3, Ex. 1.)  Plaintiff's counsel also explains that it is satisfied with this Settlement Agreement, as it contains both injunctive and monetary relief to Class Members allegedly damaged by the misrepresentations.  (Warshaw Decl. ¶ 9.)  In light of these facts, this factor weighs in favor of approval.

### 7. The Presence of a Governmental Participant

There is no "governmental participant" in this case.  *Staton*, 327 F.3d at 959.  As a result, this factor does not affect the Court's analysis.  *See Torrisi*, 8 F.3d at 1376.

### 8. The Reaction of the Class Members to the Proposed Settlement

"[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms . . . are favorable to the class members."  *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 529; *see also Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 448 (E.D. Cal. 2013) ("Where a settlement agreement enjoys overwhelming support from the class, this lends weight to a finding that the settlement agreement is fair, adequate, and reasonable.").  Here, the settlement administrator, Rust, provided notice to the Class Members in compliance with the Court's Order preliminarily approving the proposed settlement.  (*Compare* Dkt. No. 47 ¶¶ 12–22, *with* LeFebvre Decl. ¶¶ 3–7.)  Rust received no exclusion requests or objections in

Case 2:15-cv-01726-BRO-PJW  Document 57  Filed 04/05/16  Page 13 of 19  Page ID #:806

LINK:

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 15-01726-BRO (PJWx) | Date | April 5, 2016 |
|---|---|---|---|
| Title | JAMES EASHOO V. IOVATE HEALTH SCIENCES U.S.A., INC. | | |

response. (LeFebvre Decl. ¶ 11.) Further, at the hearing, no Class Members appeared or raised any objections. Given these facts, this factor weighs in favor of approval.

### 9. The Method of Distribution

A district court must also find that a proposed settlement's plan for allocation among the class members is fair and reasonable before granting final settlement approval. *See Class Plaintiffs*, 955 F.2d at 1284–85. "A plan of allocation that reimburses class members based on the type and extent of their injuries is generally reasonable." *See In re Citric Acid Antitrust Litig.*, 145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001).

The proposed method of distribution here will fairly compensate Class Members. As discussed above, the Class Members who submitted timely responses will recover the amount they have proven they paid for Defendant's protein products through receipts or other proofs of purchase, up to $300 per household. (Warshaw Decl. ¶ 4, Ex. 2 at 10.) Further, Class Members unable to prove their purchases, but who submitted a timely, sworn statement identifying qualifying protein products they purchased, will recover $10 per qualifying product, up to $50 per household. (*Id.*) Any surplus funds will be distributed first to the individuals who were able to prove they made purchases in excess of $300 through receipts or proofs of purchase, then any remaining surplus will be distributed to the other Class Members on a pro-rata basis. (*Id.*) Finally, according to the Settlement Agreement, Rust will make payments directly to each participating class member via first-class mail. (*Id.*) In light of these facts, the Court finds this method of distribution to be reasonable and accordingly weighs this factor in favor of approval.

In sum, all of the applicable fairness factors weigh in favor of approving the settlement agreement. As such, the Court concludes that the proposed settlement is fair, adequate, and reasonable. The Court therefore **GRANTS** Plaintiff's Motion for Final Approval.

LINK:

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 15-01726-BRO (PJWx) | Date | April 5, 2016 |
|---|---|---|---|
| Title | JAMES EASHOO V. IOVATE HEALTH SCIENCES U.S.A., INC. | | |

### B. Class Counsel's Request for Attorneys' Fees

#### 1. Whether an Award of Attorneys' Fees from the Common Fund is Appropriate

Plaintiff's attorneys seek a percentage fee award of 25% based on the $2.5 million common fund. (Mot. for Att'ys' Fees ("Fees Mot.") at 2.) As discussed above, an award of attorneys' fees from a common fund is appropriate only where the court can: "(1) sufficiently identify the class of beneficiaries; (2) accurately trace the benefits; and (3) shift the fee to those benefitting with some exactitude." *Staton*, 327 F.3d at 972 (citing *Van Gemert*, 444 U.S. at 478–79). These criteria are not met when the litigants "simply vindicate a general social grievance." *Van Gemert*, 444 U.S. at 479. But so long as each class member has "an undisputed and mathematically ascertainable claim" to a sum recovered on his or her behalf, a fee award from the sum is appropriate. *Id.* Thus, a percentage-method fee award based upon the $2.5 million common fund here is appropriate so long as the *Staton* criteria are met.

The first requirement is satisfied, as the class definition is clear and Plaintiff has identified 25,801 participating Class Members, plus an additional 1,039 potential Class Members who submitted incomplete responses. (Warshaw Decl. ¶¶ 10–11.) The Court can also accurately trace the benefits of the settlement and shift the fee with some exactitude, as the method for apportioning each Class Member's benefit is both fair and readily calculable. The Court therefore approves Plaintiff's attorneys' request to base the fee award upon a percentage of the $2.5 million common fund. *See Van Gemert*, 444 U.S. at 479.

#### 2. Whether Class Counsel's Requested Fee is Fair and Reasonable

The Court next considers whether the particular fee request is fair and reasonable. Here, Plaintiff's attorneys request a 25% fee award, which, based on the $2.5 million common fund, would total $625,000 in attorneys' fees. (Fees Mot. at 2.) This request comports with the Ninth Circuit's 25% benchmark for percentage-method fee recovery. *See Hanlon*, 150 F.3d at 1029. Nevertheless, the Court "must show why [the] percentage and the ultimate award are appropriate based on the facts of the case." *In re Omnivision Techs.*, 559 F. Supp. 2d at 1046. As discussed above, in considering the overall fairness

Case 2:15-cv-01726-BRO-PJW Document 57 Filed 04/05/16 Page 15 of 19 Page ID #:808

LINK:

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 15-01726-BRO (PJWx)** | Date | April 5, 2016 |
|---|---|---|---|
| Title | **JAMES EASHOO V. IOVATE HEALTH SCIENCES U.S.A., INC.** | | |

and reasonableness of a fee award, a court should consider the following factors: "(1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden on class counsel; and (5) awards made in similar cases." *Id.* (citing *Vizcaino*, 290 F.3d at 1048–50). The Court will address each factor in turn.

### i. The Results Achieved

"The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award." *In re Omnivision Techs.*, 559 F. Supp. 2d at 1046. In considering the fairness and reasonableness of a fee request, a district court should also recognize the value of non-monetary relief, *see Vizcaino*, 290 F.3d at 1049, and may increase an award "to reflect the benefits to the public flowing from th[e] litigation," *see Bebchick v. Wash. Metro. Area Transit Comm'n*, 805 F.2d 396, 408 (D.C. Cir. 1986).

Here, Plaintiff's attorneys obtained a total of $2.5 million in monetary relief to be distributed among the participating Class Members. (Fees Mot. at 6.) This is a significant recovery. Plaintiff's counsel also negotiated injunctive relief, which, as discussed above, will remedy the alleged misrepresentation of the protein amount in Defendant's protein supplements. This benefit also flows to the public, as it ensures that Defendant's protein products will accurately indicate the amount of protein they contain. For these reasons, this factor weighs in favor of approving Plaintiff's counsel's 25% fee request.

### ii. The Risk of Litigation

The risk that further litigation might result in no recovery is a "significant factor" in assessing the fairness and reasonableness of an award of attorneys' fees. *In re Omnivision Techs.*, 559 F. Supp. 2d at 1046–47; *see also Vizcaino*, 290 F.3d at 1048 (discussing that "[r]isk is a relevant circumstance" in determining an attorneys' fee award in a common fund case). In evaluating the risk of the litigation, a court may consider the complexity of the legal issues involved. *In re Omnivision Techs.*, 559 F. Supp. 2d at 1046–47.

Case 2:15-cv-01726-BRO-PJW Document 57 Filed 04/05/16 Page 16 of 19 Page ID #:809

LINK:

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 15-01726-BRO (PJWx) | Date | April 5, 2016 |
|---|---|---|---|
| Title | **JAMES EASHOO V. IOVATE HEALTH SCIENCES U.S.A., INC.** | | |

As discussed above, there are some risks involved in continued litigation of this action. (Fees Mot. at 8.) For example, because Plaintiff challenged the amount of protein advertised on the labeling of Defendant's protein products, there is a complex factual issue regarding whether that claim has merit. (*Id.*) For example, Plaintiff would incur additional costs because Plaintiff would have to pay one or more experts to perform in-depth testing of Defendant's products to prove that claim. (*Id.*) Further, if litigation continues, there would be a risk that Defendant would prevail on its Motion to Dismiss, which was not previously resolved. (*Id.*) Assuming Defendant did prevail, Plaintiff's action could be dismissed in its entirety. (*Id.*) Finally, Defendant would oppose class certification, likely arguing that "common issues do not predominate because of variations in damages and the Class Members' reliance on the alleged protein content misrepresentations." (Class Action Mot. at 10.) Given these facts, the Court finds that the level of risk involved in further litigation favors granting the requested 25% fee.

### iii. The Skill Required and the Quality of Class Counsel's Work

The Court may also consider the skill required to prosecute and manage this litigation, as well as Plaintiff's attorneys' overall performance. *See In re Omnivision Techs.*, 559 F. Supp. 2d at 1047. As discussed above, Plaintiff's counsel, Pearson, Simon & Warshaw, LLP, has "extensive experience in class action litigation, [and] ha[s] negotiated numerous other class action settlements." (Class Action Mot. at 11; Warshaw Decl. ¶ 3, Ex. 1.) Also mentioned above is that Plaintiff's counsel negotiated a significant recovery for Plaintiff and the Class Members. This factor accordingly weighs in favor of granting the 25% fee.

### iv. The Contingent Nature of the Fee and the Financial Burden Carried By Class Counsel

The contingent nature of the representation bears on the overall fairness and reasonableness of a fee request. *See In re Omnivision Techs.*, 559 F. Supp. 2d at 1047. Here, Plaintiff's counsel explains that it advanced all costs, including costs relating to discovery and mediation. (Fees Mot. at 10.) It also indicates that it represented Plaintiff on a contingency basis, with no promise of repayment. (Fee Mot. at 11.) Given these facts, this factor weighs in favor of granting the 25% fee.

Case 2:15-cv-01726-BRO-PJW Document 57 Filed 04/05/16 Page 17 of 19 Page ID #:810

LINK:

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 15-01726-BRO (PJWx) | Date | April 5, 2016 |
|---|---|---|---|
| Title | JAMES EASHOO V. IOVATE HEALTH SCIENCES U.S.A., INC. | | |

### v. Awards Made in Similar Cases

In cases where class counsel recovered less substantial sums for the class members, courts have found a fee award of 25% of the common fund appropriate. *See, e.g.*, *Ontiveros v. Zamora*, 303 F.R.D. 356, 368, 375 (E.D. Cal. 2014) (finding that a 25% fee was reasonable when class counsel procured a $2 million settlement); *Pierce v. Rosetta Stone, Ltd.*, No. C 11-01283-SBA, 2013 WL 5402120, at *6 (N.D. Cal. Sept. 26, 2013) (finding that a fee of 25% of the common fund was reasonable to compensate class counsel, which obtained a $600,000 award for the class members); *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 459, 462 (E.D. Cal. 2013) (finding a 25% fee reasonable when class counsel negotiated a $400,000 common fund). Given that Plaintiff's counsel seeks the 25% Ninth Circuit benchmark, and because courts have granted that percentage in cases where the recovery was less substantial, the Court finds that the requested fee of 25% is reasonable. Accordingly, this factor weighs in favor of granting the 25% fee.

After analyzing each of the above factors, the Court concludes that the requested 25% fee is fair and reasonable under the circumstances.

### 3. The Lodestar Method Cross-Check

Courts may apply the lodestar method as a "cross-check" on the reasonableness of a percentage-based fee award. *Vizcaino*, 290 F.3d at 1050. The lodestar "is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). A court may adjust the lodestar figure upward or downward by an appropriate multiplier to reflect "a host of 'reasonableness' factors, including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Id.* at 941–42 (internal quotation marks omitted).

Here, Plaintiff's attorneys calculate their lodestar to be $450,677.50, based upon 825.90 working hours at rates ranging from $225 to $985 per hour. (*See* Decl. of Daniel L. Warshaw in Supp. of Mot. for Att'ys' Fees ("Warshaw Fees Decl.") ¶ 15, Ex. 1.)

LINK:

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 15-01726-BRO (PJWx) | Date | April 5, 2016 |
|---|---|---|---|
| Title | JAMES EASHOO V. IOVATE HEALTH SCIENCES U.S.A., INC. | | |

Plaintiff's counsel supports this figure with documents indicating the hours worked on the case. (*Id.*) As discussed above, 25% of the $2.5 million common fund is $625,000. Thus, an award of 25% of the common fund would yield a fee award that is $174,322.50 greater than the estimated lodestar. In other words, the requested fee is approximately 1.39 times greater than the estimated lodestar. Given the complex factual issues in this case, the risk of future litigation, and the substantial recovery obtained on behalf of Plaintiff and the Class Members, the Court finds the increase in the lodestar to be reasonable. That the $625,000 figure represents 25% of the common fund, which is the benchmark percentage in the Ninth Circuit, further supports this conclusion. Accordingly, the Court **GRANTS** Plaintiff's Motion for Attorneys' Fees in the requested amount of $625,000.

### 4. Class Counsel's Request for Reimbursement is Reasonable

Plaintiff's attorneys also request reimbursement for the $8,013.95 they advanced for costs and expenses of the litigation. (Fees Mot. at 16–17; Warshaw Fees Decl. ¶ 20, Ex. 2.) These expenses include fees for court filings, transcripts, travel expenses, mediation, photocopying, postage, and other necessary costs. (Warshaw Fees Decl. ¶ 20, Ex. 2.) All of these expenses may be reimbursed. *See Odrick v. UnionBancal Corp.*, No. CV 10-05565 SBA, 2012 WL 6019495, at *6 (N.D. Cal. Dec. 3, 2012) (approving expenses "for a retained expert, mediation, travel, copying, mailing, legal research, and other litigation-related costs"); *Rutti v. Lojack Corp.*, No. CV 06-00350-DOC, 2012 WL 3151077, at *12 (C.D. Cal. July 31, 2012) ("Expenses such as reimbursement for travel, . . . lodging, photocopying, long-distance telephone calls, computer legal research, postage, courier service, mediation, exhibits, documents scanning, and visual equipment are typically recoverable."). The Court therefore **GRANTS** reimbursement for these costs in the requested amount of $8,013.95.

### 5. Class Counsel's Request for Incentive Awards is Reasonable

In the context of class action cases, incentive awards for the named representatives are discretionary but nevertheless "fairly typical." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009). Incentive awards are designed "to compensate class representatives for work done on behalf of the class, to make up for financial or

LINK:

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 15-01726-BRO (PJWx) | Date | April 5, 2016 |
|---|---|---|---|
| Title | JAMES EASHOO V. IOVATE HEALTH SCIENCES U.S.A., INC. | | |

reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Id.* at 958–59.

Here, Plaintiff's attorneys request an incentive award of $5,000 for the lead plaintiff, James Eashoo. (Fees Mot. at 17.) As Mr. Eashoo explains, he has been actively involved in the litigation of this action since the case's inception. (Decl. of James Eashoo ("Eashoo Decl.") ¶ 3.) Mr. Eashoo's involvement has included attending meetings with counsel, reviewing complaints and other relevant pleadings filed in this case, being deposed as the class representative on May 5, 2015, reviewing the deposition transcript, participating in settlement negotiations, and reviewing and approving the settlement documents. (*Id.*) In total, Mr. Eashoo approximates that he has spent thirty hours working on this case. (*Id.*) In light of these facts, the Court concludes that the $5,000 award is appropriate to compensate Mr. Eashoo's "work done on behalf of the class." *See Rodriguez*, 563 F.3d at 958. The Court accordingly **GRANTS** the request for a $5,000 incentive award.

## V.     CONCLUSION

In light of the foregoing, the Court **GRANTS** Plaintiff's Motion for Final Approval, as well as Plaintiff's Motion for Attorneys' Fees and the request for a lead plaintiff incentive award.

**IT IS SO ORDERED.**                                                            :

Initials of Preparer             rf